390 So.2d 1325 (1980)
James L. BORDELON
v.
Cheryl Gaspard BORDELON.
No. 67521.
Supreme Court of Louisiana.
November 10, 1980.
*1326 Chris J. Roy, Alexandria, for plaintiff-applicant.
Jeannette Theriot Knoll, Knoll & Knoll, Marksville, for defendant-respondent.
BLANCHE, Justice.
This case involves a protracted child custody fight between divorced parents which began when the custodial parent, the mother, allowed a man not her husband to reside with her and her minor children. Although the father obtained custody by default upon proof of the illicit relationship the mother, after one unsuccessful attempt, regained custody some ten months later upon a showing that her home life with her second *1327 husband had stabilized. The father appealed the decision and the Third Circuit Court of Appeal affirmed. We granted a writ of certiorari to determine the appropriate standard of proof applicable to change of custody cases.
James Bordelon, relator, married Cheryl Gaspard, respondent, in 1971. Cindy Kaye Bordelon, the child whose custody is in dispute, was born to them that same year. James and Cheryl separated in fact when the child was one year of age and Cheryl took charge of raising the child. In 1975, James obtained a divorce from Cheryl and the judgment awarded custody of the minor to Cheryl. Cheryl then married Kenneth Bordelon, admitted to be the father of her second child, Kenneth Jr., who had been born prior to Cheryl's divorce from James. James Bordelon then contracted his fourth marriage.
In January 1978, Cheryl took both children and left Kenneth to reside in her home town. She admitted that she then lived in concubinage with another man for approximately 1½ months. This relationship prompted Kenneth Bordelon, who had previously filed suit for a separation, to petition for custody of Kenneth, Jr. and James Bordelon to seek a change of custody of Cindy to himself. James was granted a change of custody by default judgment after Cheryl fled the jurisdiction of the court in an attempt to keep from loosing Cindy. Armed with a court order, he regained physical custody of Cindy in Texas. Kenneth and Cheryl were reconciled before the custody hearing concerning Kenneth, Jr., and they have remained married to the present.
In February 1979, approximately three months after the reconciliation and five months after the custody change, Cheryl petitioned for a change of custody of Cindy. A custody change was denied since the trial court was not positive that Cheryl's marriage was truly stable after only three months' reconciliation. Further, the court found that the only factor indicating that the father was any less fit to raise Cindy than he was five months earlier was that during this period he was charged with the crime of shoplifting and had forfeited his appearance bond. In addition, the court noted that Cindy was in the middle of a school year and that a sudden change of custody would require her to become readjusted to a new school in a very short time. In August 1979, Cheryl again petitioned for custody of Cindy. At trial, Cheryl and Kenneth Bordelon testified that they had been happily married since their reconciliation and that they both missed Cindy very much. They also testified that Kenneth had practically raised Cindy after Cheryl's factual separation from James and that Cindy was very close to her half-brother, Kenneth, Jr. Cheryl testified that every other weekend she drove 400 miles one way to exercise her visitation privileges. There was also some testimony that James Bordelon was defrauding the Social Security Administration by working while receiving benefits for total disability. At the conclusion of the trial the court, without assigning reasons, rendered judgment in favor of respondent, Cheryl Bordelon.
In affirming the change of custody to the mother, the Third Circuit Court of Appeal stated that the singular test in child custody matters is the best interest of the child as determined from a totality of the circumstances, including maintenance of a stable environment for the child. Applying this test, the court stated, "In light of evidence showing the mother's continued reform, the fact that the child is being returned to the mother after being with the father less than a year, and the great weight to which the trial judge's decision is entitled in custody cases, we cannot say that the district judge was clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (1970)." 381 So.2d 871 at 875.
Relator argues that, given the undisputed facts, the best interest of the child would be served as a matter of law only by allowing the custody to remain with relator. In making this argument he claims that the lower court erroneously applied the doctrine of manifest error to a situation not calling for appellate review of fact. He claims *1328 that the error was compounded by the court's failure to apply a rule which would have required respondent to bear a heavy burden of proving that continuation of the present custody (with relator) was so deleterious to the child as to justify removing her from the environment to which she was accustomed. Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971).
Although not expressly provided until a 1979 amendment to Civil Code art. 157, this Court had held in the past that the article applied to a change of custody as well as an initial award of custody. Sanford v. Sanford, 208 La. 1073, 24 So.2d 145 (1945); Black v. Black, 205 La. 861, 18 So.2d 321 (1944). Before 1977, this article and all of its predecessor articles in earlier codifications provided in substance that child custody was to be awarded to the spouse who obtained the judgment of separation or divorce unless the court found that "for the greater advantage of the children", custody should be awarded to the other spouse.
In Fulco, supra, this Court synthesized into a framework of analysis the various rules which had been judicially formulated over the years in change of custody cases. We concluded that the following legal principles were relevant to a determination of child custody: (1) The paramount consideration in determining to whom custody should be granted is always the welfare of the children. (2) The general rule is that it is in the best interest of the children to grant custody to the mother, especially when they are of tender years, unless the mother is morally unfit or otherwise unsuitable. (3) When a trial court has made a considered decree of permanent custody, the party seeking a change of custody has a heavy burden of proving that the present custody is deleterious to the children as to justify removing them from the environment to which they are accustomed. (4) The decision of the trial judge is entitled to great weight. Eventually, the first principle concerning the welfare of the children came to be construed as requiring custody changes to be in the best interest of the children. Estes v. Estes, 261 La. 20, 258 So.2d 857 (1972); DeCelle v. DeCelle, 313 So.2d 634 (La.App.2d Cir.1975).
In 1977 the legislature, no doubt aware of Fulco and later cases following it, saw fit to amend C.C. art. 157 to read, in pertinent part, as follows:
"In all cases of separation and divorce, permanent custody of the child or children shall be granted to the husband or the wife, in accordance with the best interest of the child or children."
In essence, the legislature expressly adopted only one element of the Fulco rationale, thereby indicating an abrogation of the remainder of the rationale to the extent that it prescribed substantive criteria for granting and changing custody.
This position is strengthened when one considers the language chosen by the legislature in relation to the burden of proof announced in Fulco. In requiring proof that continuation of present custody was deleterious to the child before permitting a change of custody, Fulco, supra, we were, in substance, limiting the rule of the best interest of the child to only those situations where the danger of physical or psychological harm to the child required a change of custody. In amending the child custody statute, the legislature gave no indication that such a stringent substantive limitation on custody changes was applicable, and this Court is in no position to read such a requirement into the statute. Thus, the best interest of the child, and not the possibility of harm, is the sole criterion applicable to change of custody cases.[1]
*1329 As the Third Circuit Court of Appeal correctly indicated, even though there is no longer an inflexible rule with regard to changes of custody, the policy consideration underlying the rule, stability of environment, is still relevant to a determination of the best interest of the child. A court should consider the prior history of the child's custody when asked to change custody. Generally, it might not be in the best interest of a child to be regularly moved from parent to parent. But this is a single consideration to be weighed with all other factors relevant to a determination of the best interest of the child.
Relator's next argument involves the scope and method of appellate review of custody cases. He posits that the "manifest error" doctrine, cited by the appellate court as controlling, is only applicable to findings of basic or evidentiary fact and is not applicable to conclusions founded upon undisputed fact. Thus, relator urges us, in essence, to review the trial court's judgment, and its implicit conclusion that the facts indicate that the best interest of the child would be served by placing her with her mother, de novo. This contention is without merit.
This Court has clearly stated that in child custody cases, the procedure for appellate review is to give great weight to the determination of the trial judge, and to overturn a determination only when there is a clear abuse of discretion. Fulco, supra; Cleeton v. Cleeton, 383 So.2d 1231 (La.1980). This test is substantially similar to the rule applied by the appellate court, which prevents the upsetting of a trial court determination of fact unless it is "clearly wrong". Arceneaux v. Domingue, 365 So.2d 1330 (La.1979). Under these rules, a conclusion reached by a trial court derived from the facts is entitled to just as much weight as a conclusion that certain evidence establishes a fact. Thus, the Third Circuit Court of Appeal applied a proper standard of review.
Upon our review of the record, we conclude that the trial court did not abuse the discretion accorded it by law. The facts showed that the mother was primarily responsible for raising the child from birth until the father obtained custody when the child was almost seven years of age. The child prospered while under the care of the mother and, later, the mother's second husband. Testimony established that the mother's standard of living was more than adequate to allow the child's former standard of living to continue. The child has a younger half-brother of whom she is very fond who is living with the child's mother.
The only factors weighing against the change of custody to the mother are the fact that the mother, during a period of marital discord, lived in concubinage for a short while and the fact that the father had custody of the child for ten months prior to this action. In this regard, the following language from Cleeton, supra, at 1236 is relevant:
"To change the custody of these girls would punish their mother for past behavior when there is no proof of a detrimental effect on her daughters. An award of custody is not a tool to regulate human behavior. The only object is the best interest of the child. LSA-C.C. art. 157."
Further, the stability factor weighs heavily in favor of the mother, since she was the parent most intimately involved with raising the child and had only lost custody for a short while in comparison to the child's age.
For the foregoing reasons, the judgment of the lower court is affirmed.
AFFIRMED.
DIXON, C. J., concurs with reasons.
DENNIS, J., concurs for reasons assigned by DIXON, C. J.
LEMMON, J., dissents and assigns reasons.
DIXON, Chief Justice (concurring).
I respectfully concur, disagreeing with the explanation of the appropriate standard of appellate review.
*1330 LEMMON, Justice, dissenting.
The only facts pointed to by the court of appeal as supportive of the trial court's decision to change custody were (1) the mother's continued reform and (2) the relatively short period of time (one year) that the father had custody.
The first fact smacks of maternal preference considerations, suggesting that the mother is entitled to regain custody lost because of immoral behavior if she raised her morals to an acceptable level. And the second fact merely suggests that a second change of custody is not too bad if done relatively quickly.
But a series of custody changes are bad, and significant factual justification should be required. The mother's earning her "right" to regain custody by improving her moral behavior does not, in my opinion, constitute significant justification. Once a mother has lost custody, the award to the father should not be changed back unless the mother presents sufficient facts to establish that a second change is in the best interest of the child (rather than a reward for the mother).
NOTES
[1] We need not decide, as the appellate court chose, whether the 1979 amendment to C.C. art. 157, eliminating the maternal preference aspect of Fulco, is retroactive or not since it is nothing more than a clarification of the language of the statute as amended in 1977 and it tells us nothing more than what we have already indicated the 1977 amendment accomplished. Further, the addition of language expressly requiring application of the "best interest" test to changes of custody merely codifies the interpretive jurisprudence, Black v. Black, supra, which was neither expressly nor impliedly altered by the 1977 amendment.