COVINGTON, Judge.
This is an appeal by the mother, Rita Setliff Lawson, from a judgment dated June 19, 1980, granting permanent custody of the minor child, Shad Lawson, who was age 7 at the time of the hearing, to his father, Richard K. Lawson. We affirm.
In May of 1977, the parents of the minor child physically separated, with the very young child being left with the father. Then, the mother sued for separation, temporary custody, child support and certain injunctive relief; however, the parties reconciled, resulting in the trial court’s dismissal of the separation action. Subsequently, another suit for separation was filed by the wife on December 27, 1978. The judgment in the matter of custody, signed January 31, 1979, decreed “that at the time of hearing on the merits the child support and/or alimony can be fixed; and that it will not be necessary to retry the issue of permanent custody and rehear evidence already heard, but that new evidence relative to custody shall be received into evidence,” and awarded temporary custody to the mother.
Custody was maintained with Rita Lawson through several hearings on rules; and on June 22,1979, a judgment of separation was rendered in favor of Rita Lawson, with “custody”, subject to reasonable visitation rights, to remain with the mother. This was in effect an award of “permanent custody.” LSA-C.C. art. 157, as amended; O’Bryan v. O’Bryan, 391 So.2d 1206, (La. App. 1 Cir. 1980) No. 13,583. The father was condemned to pay child support.
Then, on December 12, 1979, the father filed suit for divorce and sought permanent custody of Shad Lawson, alleging that it was in “the best interest” of the child to grant such custody to the father. On March 11, 1980, a divorce was rendered in favor of Richard Lawson, with all outstanding orders of the court remaining in effect. Thereafter, the trial judge rendered judgment on June 19, 1980, for oral reasons assigned, in favor of the father giving him permanent custody, with visitation rights reserved to the mother.
This case is governed by LSA-C.C. art. 157, as amended, which provides that permanent custody of the child shall be granted to the husband or the wife (mother or father) in accordance with “the best interest” of the child, “without any preference being given on the basis of sex of the parent.” This codal article as amended does away with the maternal preference rule and any presumption in favor of the mother in a custody dispute. Dickey v. Dickey, 383 So.2d 803 (La.App. 1 Cir. 1980); Thornton v. Thornton, 377 So.2d 417 (La. App. 2 Cir. 1979). This amendment also abrogates the “double-burden” rule. Bor-delon v. Bordelon, 390 So.2d 1325 (La.1980).
The standard of review in custody matters gives great weight to the determination of the trial judge, and his discretion will not be disturbed on review in the absence of a clear showing of abuse thereof. Bordelon v. Bordelon, supra; Cleeton v. Cleeton, 383 So.2d 1231 (La.1980); Montgomery v. Montgomery, 383 So.2d 1384 (La. App. 4 Cir. 1980). We find no abuse in the instant case.
The trial judge had the opportunity to view the opposing parties and was in a better position than the reviewing court to evaluate the best interests of the child from his total overview of the conduct and character of the parties and the effect of all of the factors on the welfare of the child.
The record reflects that this is a suit seeking, inter alia, a change in the permanent custody of the child from the mother to the father.
There is nothing in the record to suggest that Shad Lawson was anything other than a happy, healthy, well-adjusted child while Richard Lawson had physical custody of his son, from the summer of 1976 until December 20, 1978. In contrast, the record reflects that since December 20, 1978, the child has been uprooted and moved several times, living first in East Baton Rouge Parish and then being moved *389 to Rapides and Natchitoches Parishes, and then back and forth between the two parishes. The mother explained the child’s frequent absences from school as sick with chicken-pox, being brought home late the night before school by the father, and being “too disturbed” to go to school. The record reflects numerous visitation problems while the child was in the care of the mother. The mother repeatedly blocked attempts by the father to see and talk with the child, culminating in her refusal to obey the judgment of the Family Court of the Parish of East Baton Rouge. Concerning the visitation problems, the mother testified:
“Q. I asked if you refused to allow Richard Lawson to see his son as set forth in the judgment of separation.
A. Yes. For one reason.
Q. But you did refuse.
A. Yes, I did.
Q. Have you refused on other occasions when Mr. Lawson has travelled to Alexandria to see the child?
A. Yes, sir; when he came on the wrong day, Or when it was not his weekend to have Shad.
Q. Isn’t it true that there have been occasions when he has been up there one weekend and you have denied visitation and he would attempt the next weekend and you denied it again?
A. That was no — I have no knowledge of that.
Q. Okay. You had Richard Lawson arrested, did you not?
A. Yes, I did.
Q. For non-support.
A. Yes.
Q. And it was because of the occasion when he brought the check and you refused the child and at that time you refused to let him see the child and he walked away.
A. Would you mind saying that again?
Q. Okay. The whole incident of having him arrested arose over that payment that you discussed when he came to see the child and you refused to let him see him?
A. Sir, that was December 2, he came, which was not his weekend; and he went away with the check.
Q. When did you file the non-support charge?
A. December 18, 1979.
Q. Were you holding a check at that time that had been tendered by Mr. Lawson, mailed to you?
A. I had that cashed and put in the bank. I sure did.
Q. Didn’t you hold that check for about two or three months during the pendency of that non-support proceeding?
A. I had bills to pay. No, I did not.
Q. Where was Shad when Richard was arrested?
A. At my aunt and uncle’s that raised me.
Q. Okay. Was he in the room?
A. Yes, he was.
Q. Did you make any attempt to get him away from that scene?
A. No, I did not.
Q. Why?
A. Because it was not my fault that he was arrested.
Q. But, it was your child.
A. Yes, he was.
Q. And you felt nothing about putting him through the ordeal of seeing his father arrested at your behest.
A. I know that hurt my child and I know it hurt me also.
Q. But you made no attempt to remove him from there?
A. I did not. That’s the answer.
Q. How long has it been since Richard has been allowed to see his child?
A. I think it was the 24th of April if I am not mistaken.
Q. And on occasion he has driven up and been refused the right to see Shad?
A. Not that I know of.
*390 Q. You heard him say that there were times when he would drive up and Shad would be kept inside the house and he was not allowed to see Shad at this time?
A. This was one thing I do not remember.”
She described herself as a “nervous person” who is taking Phenobarbitol and Dilantin and who goes to the doctor once a month. She has “no ability to work in public jobs,” such as secretary, and lives on Social Security income, food stamps and money from the Housing Authority.
The child’s physical, mental and emotional needs are met and his surroundings are stable when he lives with his father and the environmental circumstances of his father’s home are beneficial to the minor child. Although the record reflects that this is actually the third change in “custody” of this young boy within a brief span of time (three times in three years), there is ample evidence in the record to convince us that the best hope for this child to lead a reasonably normal life lies with the father having the permanent custody of him. Our review of the record leads us to conclude that the trial court had a sufficient basis for the award of permanent custody of Shad Lawson to his father, Richard K. Lawson. We conclude that the trial court made a reasoned and correct award of permanent custody based on all of the evidence, and the best interest of this child will be served by permanent custody being in the father.
Accordingly, the judgment is affirmed at the appellant’s costs.
AFFIRMED.