SCHOTT, Judge.
This is an appeal by Mrs. Mary Ann Sel-igman Ohman, now the wife of Frank Ryan, from a judgment dismissing her motion to obtain custody over her daughter, Catherine Ohman, who was born February 26, 1973. The principal issue is whether the trial judge erred in maintaining custody with the father, John Ohman, considering the unusual circumstances and procedural aspects of the case.
In May, 1978, John Ohman obtained a divorce from his wife, and by consent custody of Catherine was awarded to Mrs. Ryan. He was awarded weekly visitation rights with the proviso that should he be at sea on any week end his parents would exercise the visitation rights. The parties abided by the terms of the judgment without complications until April 13, 1979, when the grandfather called on Mrs. Ryan to pick up the child but was refused on the representation that the child was ill. In June, 1979, Mrs. Ryan moved to New York taking Catherine with her and leaving Mr. Ryan in New Orleans.
On February 8, 1980, Mr. Ohman filed a petition for writ of habeas corpus in which he sought custody of the child. Mrs. Ryan was served with this petition at the New Orleans International Airport just as she was arriving from New York. When the sheriff identified Mrs. Ryan she declined to accept the papers so he dropped them at her feet. On February 11 custody was awarded to Mr. Ohman on the basis of his uneontra-dicted evidence. Shortly after the rendition of this judgment Mr. Ohman went to New York where, accompanied by a detective, he picked up his daughter while she was on the way to school and brought her back to his home in New Orleans.
No appeal was taken from the judgment of February 11, but instead Mrs. Ryan filed on March 14, 1980, what is captioned a “Motion to Vacate and/or Change Judgment Awarding Custody of Minor Child to Father.” She alleged that she had moved to New York in order to improve her employment opportunities, did not hide this and her former husband and others in the City of New Orleans knew of her whereabouts. She blamed ignorance of the law and incorrect legal advice for her failure to appear at the habeas corpus hearing. She contended that the state of New York was the court of proper jurisdiction, but alternatively pleaded that the best interests of the child would be served if she, rather than her former husband, were granted custody of the child.
Trial of the motion was held on April 7, 1980. After hearing the evidence which consisted of the testimony of Mr. and Mrs. Ryan, of Mr. Ohman, his father, and others the court dismissed her rule and maintained the custody with Mr. Ohman. Mr. Ohman testified that from June, 1979, the child’s address was concealed from him by Mrs. Ryan and he could not locate her until he went to New York for her in February, 1980. In oral reasons for judgment from the bench the trial judge criticized both of the parents for their behavior. Mrs. Ryan for not advising the court that she was going to New York and failing to appear for the habeas corpus hearing, and Mr. Oh-man for the manner in which he obtained physical custody of the child in New York. He then indicated that Mrs. Ryan’s refusal to receive service of the habeas corpus papers and her absence from the hearing together with her moving to New York were the reasons for his maintaining custody with Mr. Ohman.
Subsequently, the trial judge denied Mrs. Ryan’s application for new trial assigning written reasons for judgment. He reviewed the history of the case, criticized both parties for their misbehavior and concluded simply:
“As indicated earlier, I am the party who must judge from whatever evidence, witnesses, etc. what is in the best interest of the child. While neither of these individ *885 uals appear to be either good or bad for the child, I am convinced that the ‘custody’ should at this time be with the father.”
In this court Mrs. Ryan contends that the trial judge erred in depriving her of custody because of her failure to notify the court when she moved to New York and to appear at the habeas corpus hearing where there was no evidence that she was unfit to be custodian. Mr. Ohman takes the view that Mrs. Ryan’s failure to appeal from the habeas corpus judgment made it final along with any questions about the change of custody from Mrs. Ryan to Mr. Ohman. Thus, argues Mr. Ohman, when Mrs. Ryan’s rule came to trial she had the burden to prove that a change of custody back to her was in the best interest of the child.
While the earlier judgment is not before us the old preoccupation with burden of proof in change of custody proceedings no longer applies. Today the sole criterion in any change of custody care is the best interest of the child with the understanding that stability of environment is still relevant to that determination. Bordelon v. Bordelon, 390 So.2d 1325 (La.1980).
Had the Bordelon case been decided at the time the present case was tried the trial judge may have reached a different decision. In any event, several conclusions emerge from our review of this record, considering the Bordelon case.
First, Mrs. Ryan’s behavior in going to New York without notifying the court and failing to appear at the habeas corpus proceedings was irrelevant to the question of what was in the best interest of Catherine Ohman. It may be arguable that her conduct in concealing the child from Mr. Oh-man was not in the child’s best interest but this question of concealment was disputed and the trial judge made no factual determination concerning it. We note, however, that Mr. Ohman’s alleged ignorance of the child’s whereabouts is strange considering the ease with which service of the habeas corpus proceedings was made on Mrs. Ryan one day when she was arriving at the airport and, likewise, the ease with which he located the child once he had the judgment in the habeas corpus proceeding.
Second, in his oral reasons for judgment the trial judge told counsel for Mrs. Ryan that once he gave custody to Mr. Ohman counsel’s “job was to convince me that my custody order was in error.” As already stated, Bordelon has stripped away from custody cases the burden of proof approach in favor of a weighing of all facts and circumstances to determine the child’s best interest.
Third, the trial judge did not consider stability of environment in making his decision. These parties separated in June, 1976, when Catherine was three years of age. She remained with her mother until February, 1980, when she was snatched away by her father. When this matter was tried she had been with him for only two months, a term which scarcely supports the concept of stability and continuity of environment compared to the length of time the girl was with her mother.
The evidence taken at the rule was not particularly persuasive as to either side. There was no evidence adversely reflecting on Mrs. Ryan, and, indeed, when Mr. Oh-man was asked whether he had any reason to consider her an unfit mother he weekly criticized her for taking what he thought was the wrong approach to Catherine’s picking out her clothes. He also made some attempt to discredit Mr. Ryan for spanking Catherine on an isolated occasion, but this apparently was not of significance to the trial judge and is not to us. The living conditions offered the child by each parent were basically the same and it would be provincial to suggest that conditions in uptown New Orleans are necessarily superior to those in Brooklyn.
Although the trial judge’s decision is entitled to great weight, on the basis of the record before us, we believe the best interest of the child requires a granting of custody to the wife. However, an additional twelve months have passed since that time and we do not know whether there had been changes in the father’s or mother’s *886 situation during this interim period. We note further that since rendition of the judgment the parents agreed to and the trial judge issued an order granting the mother more favorable visitation rights than she had originally been granted by the court.
Ordinarily when a judgment is on appeal conditions as they existed at the time of the judgment are alone considered. However, if the Bordelon principle of stability of environment is to be logically applied we must recognize that fourteen months have now elapsed since the case was tried and Catherine has now been with her father for sixteen months. Confronted by a similar problem in Cancienne v. Cancienne, 384 So.2d 843 (La.App. 4th Cir. 1980) we remanded the case to the trial court to bring all of the evidence up to date so as to reach a proper decision. The same approach is warranted here.
Accordingly, the judgment of the trial court is set aside and the case remanded to the trial court to determine if, since the trial, there has been any change in the situation of the father or of the mother and which it could be concluded, based upon principles of the Bordelon case and the views expressed herein that in the better interest of the child custody should remain with the father, otherwise, custody should be awarded to the mother and the visitation rights of the father fixed.
REVERSED AND REMANDED.
REDMANN, J., dissents from remand.