SHORTESS, Judge.
Kenneth David Billiot (plaintiff) and Marlene Ousley Billiot (defendant) were legally separated on December 12, 1980. Four children were born of their marriage: Chantelle, Michelle, and twins, Sangel and Travis. A prolonged custody battle has been waged for the custody of these children. After a lengthy hearing on October 10,1980, the trial court temporarily granted custody of Chantelle and Michelle to plaintiff and custody of the twins to defendant. The court ordered that the Department of Health and Human Resources (DHHR) institute home studies on both parents. The court continued its provisional custody order as part of the judgment of separation. On January 27, 1981, an additional custody hearing was held, as the court had received the initial home study investigations. On that date, the temporary order dividing custody was made permanent. On May 29, a judgment of divorce was obtained and the custody order previously rendered was continued. On July 1, 1981, an evidentiary hearing on plaintiff’s rule for custody of all four children was held. Plaintiff alleged that circumstances had changed because defendant had given birth to an illegitimate child. But after the hearing, the court continued its divided custody order. Both parties have appealed, as each seeks custody of all four children.
The facts developed at the evidentiary hearing held October 10, 1980, indicate that plaintiff and defendant were married on June 23, 1972, in St. Mary Parish, Louisiana; that four children were born of the marriage: Chantelle Marie, on February 6, 1973; Michelle Monique, on May 20, 1974; Travis Paul and Sangel Ann, on January 12, 1977; that in the initial years of their marriage the parties lived in a trailer in Inter-coastal City; that the parties purchased a four-bedroom home in Berwick in March of 1979, where they lived together until their separation in May of 1980; that all during their marriage the parties had numerous difficulties, primarily financial in nature, as defendant was apparently not highly adept at handling money and was impulsive in some of her buying habits; that defendant had taken an overdose of pills; that plaintiff was gainfully employed throughout their marriage as a vice-president and port captain for D & G Boat Rentals of Berwick; that he had a salary of approximately $2,000.00 per month; that plaintiff believed in corporal punishment and did on occasion administer discipline with a belt; that after the parties separated, the defendant and the four children moved to her mother’s house in Jeanrette; that during this time, defendant obtained a job as a bartender but was involved in an automobile accident when returning home from work one night and was unable to continue working; that at the time of the hearing defendant was residing in a trailer in New Iberia and sharing the rent with a female roommate; that she was unemployed; that she had no transportation; that the trailer had three bedrooms, one that she occupied, one the roommate occupied, and one for the children; that plaintiff continued to live in the community-owned house in Berwick; that Chantelle and Michelle were in school in Berwick and resided in the family home with plaintiff; that plaintiff’s parents resided in Berwick and were available to render assistance whenever necessary.
In his oral reasons for the award for temporary custody, the trial judge indicated that he felt plaintiff was basically a good parent but a little overbearing in his disci *554 pline; that plaintiff’s home in Berwick and the fact that his family also resided there would make it easier for the older children to be brought up in Berwick, especially since they were in school; that defendant lived in New Iberia in a trailer without a car, without a job, without much family nearby; that he had some reservations about her stability, as she had attempted suicide, by her own admission. The trial judge ordered home study investigations by DHHR and divided the custody while recognizing that the law did not favor such divided custody arrangements. After considering the strengths and weaknesses of both parents, the trial judge decided that divided custody monitored by DHHR was best for these children, because he did not want to separate the four-year-old twins from their mother, and felt she was in no position to care for all four children.
The DHHR home study reports received for the January hearing did not alter the trial judge’s opinion, and he maintained the divided custody. The second custody rule held in July of 1981 revealed the following additional facts: that plaintiff’s circumstances had not changed remarkably since the first evidentiary hearing; that no new allegations relative to harsh discipline were presented at this hearing; that plaintiff had a problem keeping a good housekeeper but had arranged his work schedule in such a manner that he was available personally to attend to his children; that defendant had given birth to an illegitimate child after an adulterous relationship and that said child was living with defendant along with the twins; that defendant had obtained employment as a clerk in the neighborhood grocery store; that she had received three separate raises since going to work and was doing quite well in her position; that she no longer lived in a trailer but had rented a three-bedroom house in New Iberia with a fenced-in yard several blocks from her place of employment; that her children were cared for by a close family friend during her employment hours; that the friend refused to accept money for caring for the children; that defendant had been able to buy a used car so she could take her children to the babysitter and then go to work; that defendant was hoping to be in a position to purchase the house she was renting in the near future.
After hearing all the evidence, the trial judge maintained the divided custody order of January 27, 1981, orally finding that plaintiff’s circumstances had not appreciably changed; that defendant had become pregnant by another man, which gave him concern about (1) her moral fitness, and (2) whether as a practical matter she would be able to take care of the twins, two older children, and a new baby. The trial judge was impressed that defendant had made great strides in improving the stability of her home and her economic situation. He was pleasantly surprised with the improvements and felt that they sufficiently offset his concern about the fifth child. He found that he could not change the situation he had earlier ordered, as he felt that the best interests of the older children would not be served by putting all five children in defendant’s house. On the other hand, he could not see taking the twins away from defendant, especially since she was doing so well. The Supreme Court in Bordelon v. Bordelon, 390 So.2d 1325 (La.1980), laid down the appropriate test for appellate review after reviewing the legislative intent in the amendments to C.C. Art. 157, the Supreme Court said,
. . . the best interest of the child and not the possibility of harm, is the sole criteria applicable to change of custody cases. 390 So.2d at 1328.
Further,
. .. even though there is no longer an inflexible rule with regard to changes of custody, the policy consideration underlying the rule, stability of environment, is still relevant to a determination of the best interest of the child. 390 So.2d at 1329.
Here, the trial judge obviously labored over his decision as to the best interests of these children. His concern over their welfare is very obvious when reading his oral reasons for judgment. Initially, he *555 did not want to divide the children, but he clearly set forth valid reasons for doing so. Later, he had the benefit of home studies of the respective homes. The second eviden-tiary hearing did not change his mind, and he again expressed concern over the divided custody; but again he felt that the best interests of these children required divided custody. It was obvious that he was most concerned with the stability of environment criteria, as articulated in Bordelon, supra, when he decided it would not be in the best interest of Chantelle and Michelle to take them from their father at this point and place them with their mother and three very small children.
We are not in a position to say that he committed manifest error in so doing. The test for proper appellate review is to give great weight to the determination of the trial judge, and to overturn his determination only when there is a clear abuse of discretion. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Further, a conclusion reached by a trial judge derived from the facts is entitled to just as much weight as a conclusion that certain evidence establishes a fact. Bordelon, at p. 1329.
Accordingly, we find the decision of the trial judge in this case was not manifestly erroneous, and affirm his decision, granting the permanent care, custody and control of Chantelle and Michelle Billiot to plaintiff, and granting the permanent care, custody and control of Sangel and Travis Billiot to the defendant.
The costs are assessed one-half to each party.
AFFIRMED.