422 So.2d 196 (1982)
STATE of Louisiana In the Interest of the Minor Russell A. SIMOLKE a/k/a Russell A. Simolke Navis.
No. 13342.
Court of Appeal of Louisiana, Fourth Circuit.
November 2, 1982.
*197 William C. Cox, Staff Atty., State of La., Dept. of Health and Human Resources, New Orleans, for appellee.
Patricia Vincent, New Orleans Legal Assistance Corp., New Orleans, for appellant.
Before REDMANN, GULOTTA and SCHOTT, JJ.
GULOTTA, Judge.
The curator ad hoc for the minor appeals from a March 17, 1982 judgment transferring the "care" of the five-year-old child from his foster parents to his natural parents with "custody" to remain in the Department of Health and Human Resources. We affirm.
The curator contends the transfer of "custody" breaks the emotional bond the child had developed with his foster parents and is therefore against his best interest. We disagree.
Russell "Rusty" Simolke Navis, the natural child of Susan Netto and Craig "Tony" Navis was placed in temporary custody of the Louisiana Department of Welfare on February 7, 1977. He was four months of age at that time.[1] Placement was made by the department with foster parents, Mr. and Mrs. Walter G'Sell.
On April 29, 1980, the court granted the natural mother visitation rights with Rusty away from the foster parents' home.
On a rule to terminate permanent custody invoked by the Department of Health and Human Resources, the trial judge, after hearing the testimony of a psychologist, psychiatrist and a social worker, on March 17, 1982 ordered a transfer of "care" to the natural parents. This is the judgment on appeal.
In this judgment, the trial judge continued custody of the child in the care of the Department of Health and Human Resources for the purpose of supervision and necessary therapy. The foster parents were to maintain care of the child until June 12, 1982, subject to weekend visitation rights of the natural parents. On June 12, 1982, care of Rusty was to be transferred to the natural parents, subject to monthly visitation by the foster parents. The court further ordered all parties, including the child, to undergo psychiatric therapy. It was further ordered that "custody and possible final determination" in the matter be held in April, 1983 on motion of the District Attorney's office.
At the transfer hearing, Dr. Allen Klein, a clinical psychologist, testified the psychological bond between Rusty and his foster mother was unusually close to the extent of generating significant emotional adjustment problems for the child. He described this bond as abnormal and "pathological" and testified the foster mother's "style of parenting" had made the child "extremely dependent upon her." This witness felt the ideal situation in Rusty's best interest would be to maintain a bond with his natural mother, yet maintain a tie with his foster parents. Although Dr. Klein felt an "abrupt" transfer of custody to the natural parents would be detrimental to Rusty, he felt that a planned and deliberate transfer would alleviate the disruption. In his opinion, a full and complete transition of returning the child to his natural parents should take 12-18 months.
*198 After psychologically evaluating all four "parents", Dr. Klein was of the opinion that both sets of parents had the ability to care for the child. He would question, however, the award of sole custody to Mr. Navis, the natural father, who he felt did not demonstrate good judgment in critical situations. Dr. Klein found the natural mother, like the foster parents, to be "well-oriented in her mental status."
The court also had before it a June 29, 1981 letter from Dr. C.A. Cowardin, a psychiatrist, who thought that the best interest of the child would be served by allowing the relationship with his foster parents to be permanent and recommended that the situation continue. This psychiatrist realized this directly conflicted with the rights of the parents, and proposed the two sets of "parents" attempt to work at some "creative legal solution" that would allow the child permanence in the foster home while assuring the biological parents of a continuing contact and relationship with the child.
A clinical social worker's report of September 28, 1981, concerning the natural parents and Rusty, stated the "treatment goals" of counseling administered to the natural parents at their parish mental health clinic "has basically been met." Although the social worker acknowledged the family had not "resolved all the outstanding problems", she felt the issue of child abuse was "resolved" and there was "no indication of family violence" or "any unhealthy parenting problems." From observation at a family session, this social worker further noted that Rusty seemed "at ease with his parents and the interaction seemed spontaneous and natural." She also indicated the natural mother "has integrated many of the parenting techniques taught to her" in treatment. The natural father, however, was found to have an "explosive personality with mild impairment."
Well established is the rule that in custody cases the sole criterion is the best interest of the child,[2] and the trial court's judgment will not be overturned absent a clear showing of an abuse of discretion.[3] We are not unmindful also that the rights of natural parents are preferred to those of a non-parent[4] and that the care of the State is not a substitute for the love and affection of natural parents.[5]
Applying these guidelines, we find no abuse of the trial court's discretion in transferring the "care" of the child to his natural parents under the conditions as set forth in the March 17, 1982 judgment. The transfer from foster care includes protective measures not inconsistent with the expert testimony in this case and is designed to prevent an abrupt transition with the intent to reduce possible traumatic effect on the child. The measures taken by the trial judge clearly reflect his concern for the best interests of the child and we find no reason to disturb his conclusions.
Finally, we distinguish Johnston v. McCullough, 410 So.2d 1105 (La.1982) relied on by the curator in this case. Although the Johnston case is similar to the instant case insofar as the time the child had been living with one parent before the transfer of custody to the other (7 years in Johnston and 5 years in our case), nonetheless, the dispute in Johnston was between the natural mother and father of the 13 year old child. The dispute in our case is between the natural parents on the one hand and foster parents on the other.
Because we find no abuse of the trial court's discretion to transfer the "care" of the minor from the foster parents to the natural parents, we affirm the judgment of the trial court.
AFFIRM.
NOTES
[1] A half-brother of Rusty, Jonathan Simolke, was placed in the care of his natural grandparents in 1977 after being subjected to physical abuse by Craig Navis. Jonathan is the child of Susan Netto and Johnny M. Simolke. In April, 1978 he was placed in "permanent" custody of his natural father.
[2] Bordelon v. Bordelon, 390 So.2d 1325 (La. 1980); Ohman v. Ohman, 405 So.2d 883 (La. App. 4th Cir.1981); Fouchi v. Fouchi, 391 So.2d 1352 (La.App. 4th Cir.1980).
[3] Theriot v. Huval, 413 So.2d 337 (La.App. 3rd Cir.1982); Ferguson v. Ferguson, 398 So.2d 1238 (La.App. 4th Cir.1981).
[4] Wood v. Beard, 290 So.2d 675 (La.1974).
[5] State in Interest of Driscoll, 410 So.2d 255 (La.App. 4th Cir.1982).