525 So.2d 604 (1988)
STATE of Louisiana in the Interest of Tonya Lynn SYLVESTER and Michael Anthony Sylvester, Plaintiff-Appellee.
No. 87-306.
Court of Appeal of Louisiana, Third Circuit.
May 11, 1988.
Earl Taylor, Opelousas, Ellis Daigle, Eunice, for plaintiff-appellee.
Anne Hughes, Port Allen, for defendant-appellant.
Before DOMENGEAUX and GUIDRY, JJ., and REGGIE[*], J. Pro Tem.
*605 EDMUND M. REGGIE, Judge Pro Tem.
This appeal presents two main issues: first, an evidentiary matter, whether the trial court erred in allowing a state family caseworker to testify when she had not had contact with the family in over two years; secondly, whether the trial court erred in refusing to allow the children to return to the custody of the mother.

FACTS
Theresa and Ronnie Sylvester were married on August 15, 1975. In April 1976, Tonya was born. In August 1976, the maternal grandmother, Fran Thornton, contacted the local child protective office in Opelousas, Louisiana and notified the office of possible physical abuse of Tonya by the father, Ronnie Sylvester. After a thorough investigation and a court ordered examination of the child, the child protection staff issued the following diagnostic findings on October 22, 1976:
(A) Theresa Sylvester did not know how to care, mother and nurture her daughter, Tonya;
(B) Ronnie Sylvester refused to find work and financially support the family unit
(C) Theresa and Ronnie Sylvester constantly argued with one another;
(D) Theresa's own hospitalization in a state mental health unit from 1/74 to 4/75 reflected her inability to cope with reality; and
(E) The child, Tonya, was found to have received numerous bruises to her body.
The report concluded in recommending periodic visits by the state staff to the Sylvester home to monitor Tonya and the parents' treatment of the child. It further recommended mental health evaluation of both parents if the court deemed it necessary.
In 1978 Ronnie and Theresa were legally separated. Theresa had requested custody of Tonya, however, the judgment of separation was silent to this matter. Thereafter, Theresa filed a rule for custody. During this time, Tonya remained in the custody of her father but was actually cared for by the paternal grandmother, Helen Sylvester. In June 1979, a dispositional decree was rendered in an exparte proceeding granting temporary custody of Tonya to Helen Sylvester with liberal visitation rights to both parents.
The Minutes of the Juvenile Court show that, on February 15, 1979, a stipulation was reached by all parties, including Theresa, that Tonya was declared a child in need of care under Juvenile Code Article 14(B) due to the threatened emotional condition of the child and that the parents were also in need of supervision. Theresa was represented by legal counsel at that hearing and in making that stipulation.
On May 17, 1979, a report of the Lafayette Child Protection Center recommended to the Juvenile Court that Tonya be placed with Mrs. Helen Sylvester, her paternal grandmother, due to the same condition outlined in its October 22, 1976 report to the Court. It was recommended also that the parents undergo evaluation and mental treatment. On June 12, 1979, the Juvenile Court ordered that Mrs. Helen Sylvester continue to have the temporary custody of Tonya, with visitation rights given to both parents.
In early 1979, Ronnie and Theresa reconciled and another child, Michael Anthony (Tony), was born on November 12, 1979. Tony remained in the custody of Theresa until allegations of child abuse/neglect resurfaced.
In an affidavit filed in August 1981 by the state Office of Human Development, the Juvenile Court was informed of Theresa's request of Ronnie Sylvester to be relieved of the care and custody of Tony and that Theresa did, in fact abandon the child who was not yet two years old. The Juvenile Court ordered the child taken from both parents and the custody was granted to the Louisiana Department of Health and Human Resources.
In the following months, Theresa moved to Colorado to live with her mother and had allegedly established somewhat of a normal life-style. On this basis, on August 18, *606 1982, the state agency retained legal custody of Tony but allowed him to accompany his mother to live in Colorado with her. Thereafter, Theresa abandoned Tony and left him with her mother who reported it to the Colorado State Child Protection Division which directed Theresa's mother not to let Theresa take Tony when she returned. As a result of these allegations of neglect and abuse, the State of Louisiana resumed active custody of Tony and in September 1983, placed him in the temporary care of Bruce and Terri Anderson, the paternal aunt and uncle of Tony. In May 1984, the State through the Office of Human Development, issued an interim report on Tony's status. It indicated that the Andersons were taking very good care of Tony and that his needs were being met and exceeded. Additionally, the Andersons had moved next door to the maternal grandmother who had custody of the other child, Tonya, thus allowing Tony and Tonya to interact as brother and sister. The report further reflected the continued indifference shown by the father, Ronnie Sylvester, and the social and employment instability of the mother, Theresa. The report concluded by recommending that permanent custody of Tony be given to the Andersons.
In 1986, more than seven years after Tonya had been placed in the custody of the paternal grandmother and more than five years after Tony had been placed in the custody of the State of Louisiana and placed with the paternal aunt and her husband, Theresa filed pleadings in the Louisiana Juvenile Court to obtain custody of both children with her in Colorado. The State of Colorado conducted an evaluation of Theresa for the purpose of determining whether or not she was ready to assume her role as parent once again. The report dated September 5, 1986 indicated a slight improvement in Theresa's behavior but suggested that the children remain in Louisiana under the current custody plan. After a hearing on October 24, 1986, the plaintiff's custody suit was dismissed. Plaintiff timely appealed citing three assignments of error:
(1) The trial court erred in refusing to return legal custody of the children to their natural mother;
(2) The trial court erred in allowing testimony from a caseworker of the Department of Health and Human Resources, Office of Family Services, who had not had contact with the family for over two years; and
(3) The trial court erred in failing to order steps to be taken to reunite plaintiff with her children.
As assignments one and three are similar in nature and in their argument, we consolidate them for judicial economy.

CUSTODY
Theresa Sylvester argues that the trial court erred in not granting her custody of her children, Tonya and Tony Sylvester. The law is well settled on the issue of child custody in circumstances where the parents are legally separated or whether either spouse is incapable of caring for the child.
In juvenile proceedings, the Juvenile Court looks to the Code of Juvenile Procedure Art. 85 which reads in part as follows:
"(A) In a case in which a child has been adjudicated to be in need of care, the court may:
(1) Place the child in the custody of a parent or such other suitable person on such terms and conditions as deemed in the best interest of the child. ..." (Emphasis added.)
In civil matters, LSA-C.C. Art. 146 is used to determine custody. LSA-C.C. Art. 146 reads in part as follows:
"(A) If there are children of the marriage whose provisional custody is claimed by both husband and wife, the suit being yet pending and undecided, custody shall be awarded in the following order of preference, according to the best interest of the children: ...
(B) Before the court makes any order awarding custody to a person or persons other than a parent without the consent of the parent, it shall make a finding that an award of custody to a parent would *607 be detrimental to the child and the award to a nonparent is required to serve the best interest of the child. Allegations that parental custody would be detrimental to the child, other than a statement of that ultimate fact, shall not appear in the pleadings." (Emphasis added.)
Thus, the common thread between both laws is the best interest of the child. State in Interest of N.H., 498 So.2d 91 (La.App. 5th Cir.1986); State in the Interest of Simolke, 422 So.2d 196 (La.App. 4th Cir. 1982).
Of course, when possible the child should remain in the custody of a natural parent in order to maintain family unity and help the child identify as part of the natural family unit. While the natural parent has a paramount right to custody of the natural children, when it is determined that such custody is to the detriment of the well being of the child, a non-parent custodian may be appointed who will properly care and tend to the minors. Only where there are compelling reasons should the natural parent be deprived of custody. Guidry v. Guidry, 441 So.2d 384 (La.App. 5th Cir. 1983).
The intervening "non-parent" can either be a person or the State, through its Department of Health and Human Resources. In the present case, it was the latter of the two that intervened and sought to remove custody of both of the children.
The father, Ronnie Sylvester, is not a party to this litigation and appeal. Therefore, we will not consider his condition relative to custody of his children because the matter is not before us. We only consider the reasons that dictated the removal of both children from the custody of Theresa Sylvester and the refusal of the lower court to order a change of custody back to the natural mother.
Plaintiff appeals the trial court's denial of her request to obtain custody of her children. In Gordy v. Langner, 502 So.2d 583 (La.App. 3 Cir.1987), this court was faced with similar circumstances of a mother seeking to obtain custody of her child from her maternal grandparents. In quoting from Guidry v. Guidry, supra, we stated:
"However, at a subsequent hearing to change custody brought by the natural parent previously deemed unfit, the burden of proof should rest on that natural parent to demonstrate that he or she had rehabilitated and that facts which give rise to him or her being deprived of custody at the initial hearing no longer exist Guidry v. Guidry, supra." (Emphasis added.)
Thus, the burden of proving a change in the circumstances was on Theresa, in her October 24, 1986 hearing requesting change of custody. In fact, her testimony reflected an inability to clearly think out problems pertaining to the caring of a child. She stated while she had Tony in her custody in Colorado, she became fed up with the treatment and physical abuse her parents inflicted upon Tony while she was at work. However, when she finally moved out, she left Tony behind with her parents.
Both the Louisiana Department of Health and Human Resources and the Colorado Department of Social Services reported Theresa's obvious inability to properly care for Tonya and Tony. They both recommended that the custody remain undisturbed. The Juvenile Court ruled in favor of those recommendations and found them convincing as to the factual matter contained in them considering Theresa's behavior and ability to assume control and custody of the children.
Plaintiff introduced a diagnostic report by Dr. Mary Hansen, a Colorado Psychologist who interviewed her. The report was an even mixture of favorable and disfavorable findings relative to Theresa's capabilities. While the report indicates Theresa could keep her present job indefinitely, this possibility rests on her maintaining her present level of performance. It also states that Theresa pays her bills on time and is prompt in arriving for her appointments and in completing forms on time. The negative remarks on Dr. Hansen's report indicates that Theresa still suffers *608 from some of the same traits she manifested while hospitalized in 1974 at the Southeast Louisiana Hospital (Mental). These traits included mistrust, social withdrawal, resentment and poor judgment.
In reviewing the trial record before this court, we find there to be no manifest error in the Juvenile Court's determination of the best interest of the children. The trial judge is in a better position to evaluate the best interest of a child from his observance of the parties and the witnesses and his decision will not be disturbed on review absent a clear showing of abuse. Bagents v. Bagents, 419 So.2d 460 (La.1982); Paul v. Cloud, 378 So.2d 586 (La.App. 3 Cir. 1976), writ den., 380 So.2d 101 (La.1976). No trial court abuse is shown in this case.

TESTIMONY OF CASEWORKER
Plaintiff contends that it was error for the trial court to allow testimony from a caseworker of the Department of Health and Human Resources, Office of Family Services, who had not had contact with the family for over two years.
At trial, Mrs. Linda Sebastien, a caseworker from the Office of Family Services, was called by the state to testify. Mrs. Sebastien had last contacted the Sylvester family when she had recommended to the court that Mr. and Mrs. Bruce Anderson be given legal custody of Tony Sylvester. Mrs. Sebastien was asked, "What's you opinion," referring to her current opinion of who should be given custody of the children. Plaintiff objected to this question, stating due to the lack of contact with the family, Mrs. Sebastien was not qualified to testify. The trial judge allowed Mrs. Sebastien to testify, stating "... I'll let it go in and I'll give it such weight as I think it deserves." Mrs. Sebastien went on to testify that unless Theresa's situation had changed for the better, she would not recommend that Theresa be given custody of the children.
Again, we find no error in the trial judge's decision to allow Mrs. Sebastien to comment on the case as she did. LSA-R.S. 15:463 clearly allows for such testimony and the trial judge then gave it "weight" as he saw fit.
For the reasons assigned, the trial court judgment is affirmed. All costs of this appeal are to be assigned against plaintiffappellant, Theresa Sylvester.
AFFIRMED.
NOTES
[*] Judge Edmund M. Reggie, Retired, participated in this decision as Judge Pro Tempore by appointment of the Louisiana Supreme Court.