376 So.2d 1036 (1979)
Roosevelt SHANKLIN
v.
Winetta Louise SHANKLIN.
No. 12771.
Court of Appeal of Louisiana, First Circuit.
October 8, 1979.
Rehearing Denied November 29, 1979.
*1037 Larry P. Boudreaux, Thibodaux, for defendant and appellant.
John T. Bourgeois, Thibodaux, for plaintiff and appellee.
Before COVINGTON, LOTTINGER and COLE, JJ.
COLE, Judge.
The issues presented in this appeal arise out of a contest for child custody between plaintiff-appellee, Roosevelt Shanklin, and his former wife, defendant-appellant, Winetta Louise Shanklin. The basic issue is whether the trial court abused its discretion in terminating the mother's temporary custody of the children and awarding to the father their permanent custody. Subordinate issues are whether the trial court erred in refusing to hold a hearing on the mother's rule to regain custody, and whether attorney's fees may be awarded in connection with a contempt proceeding.
The litigants were married on September 25, 1971. Two children were born of this union. They are Roosevelt Shanklin, Jr., age six, and Carla Monique Shanklin, age three.
On February 27, 1976, following a bitterly contested trial, Mr. Shanklin was awarded a divorce on proof that his wife had committed adultery. The issue of custody was not contested. Counsel disagreed whether it was to be heard at that time. Mr. Shanklin asserted in his petition, filed October 10, 1975, that because of his employment it was not possible for him at that time to care for his children and he would allow his wife to have custody but without prejudice to his right to seek custody at a future date. The children were then three years of age and two months of age. At trial, counsel for Mr. Shanklin argued that he and opposing counsel had agreed to have *1038 custody determined along with the issues of divorce and alimony. Counsel for Mrs. Shanklin denied any such agreement. In the absence of prior pleadings by Mr. Shanklin seeking custody, the court and counsel reached accord that only the questions of divorce and alimony would be at issue. The judgment rendered pretermitted expressly the question of permanent custody and gave temporary custody of the two children to the mother as prayed for in her reconventional demand.
In December of 1978, Mr. Shanklin filed a rule for a change of custody alleging that his former wife was living in open adultery. On January 24, 1979, judgment was signed granting permanent custody to Mr. Shanklin.
Six days after the custody judgment, Mr. Shanklin brought a rule for contempt against Mrs. Shanklin because she had refused to relinquish custody of Carla Monique. The trial court found the mother to be in contempt but imposed no sentence. However, it did award Mr. Shanklin $100 in attorney's fees incurred in connection with the contempt rule.
On February 15, 1979, only twenty-two days after the judgment awarding custody to Mr. Shanklin, Mrs. Shanklin petitioned the court for a change of custody. She alleged in her motion that since the previous custody hearing she had married the man with whom she had been living. The trial court refused to set a hearing on the rule.

CUSTODY AWARD
At the custody hearing, Mrs. Shanklin admitted she was living with Lee Walker, a married man, and that she was pregnant with his child. The divorce awarded Mr. Shanklin on February 27, 1976, was based on Mrs. Shanklin's adulterous relationship with this same person. She and her children had been living with Walker in his house for approximately thirteen months. Walker, who worked as a university security officer, testified that he cared for the children, had helped to support them during the period they lived with him, and would continue his support if Mrs. Shanklin retained custody. Both Mrs. Shanklin and Mr. Walker stated they planned to marry as soon as he obtained his divorce.
Mr. Shanklin testified he had remarried, had no other children, and that his wife, who did not work outside the home, would help care for his two children. He also stated he owned a three-bedroom house and was financially able to support the children. When questioned about the closeness of the relationship he had with his children, Mr. Shanklin admitted he had not seen them for two years due to his former wife's refusal to honor his visitation privileges. He explained that prior to these difficulties, he exercised his visitation rights and saw his children almost every Sunday. He further testified that he had no reason to think the children were improperly cared for by their mother other than the fact that she was living in adultery. Mr. Shanklin had filed a rule for custody some two years earlier, which never came to trial.
The legal principles applicable to the question of child custody were set forth by the Supreme Court in Fulco v. Fulco, 259 La. 1122, 254 So.2d 603, 605 (1971), as follows:
(1) The paramount consideration in determining to whom custody should be granted is always the welfare of the children.
(2) The general rule is that it is in the best interest of the children of the marriage to grant custody to the mother, especially when they are of tender years. Such paramount right of the mother to custody should not be denied unless she is morally unfit or otherwise unsuitable, and it is only in exceptional cases that the better interest of the children is served by changing their custody from the mother to the father.
(3) When the trial court has made a considered decree of permanent custody in the light of the above principles, even though such custody is subject to modification at any time when a change of conditions demands it, the party seeking *1039 the change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the children as to justify removing them from the environment to which they are accustomed.
(4) Upon appellate review, the determination of the trial judge in child custody matters is entitled to great weight. He is in a better position to evaluate the best interests of the children from his total overview of the conduct and character of the parties and the children and of community standards. His discretion on the issue will not be disturbed on review in the absence of a clear showing of abuse thereof. (citations omitted)
Since the initial award of custody in this case was not a considered decree, Mr. Shanklin was not subject to the heavy burden of proof discussed in enumerated paragraph three.
The relevant principles set forth in Fulco require us to decide whether Mrs. Shanklin's public relationship with Lee Walker proved her so morally unfit to be the custodial parent that it was in the best interest of the children to place them with their father. We note that Mr. Shanklin neither alleged nor proved any other basis for Mrs. Shanklin's unfitness.
The jurisprudence is clear on the point that proof of one act of illicit sexual intercourse or even of several acts with the same paramour does not necessarily render morally unfit a mother who is otherwise suited for custody. Monsour v. Monsour, 347 So.2d 203 (La.1977); Messner v. Messner, 240 La. 252, 122 So.2d 90 (1960). However, it has repeatedly been held that when the mother, as in this case, has consistently engaged in a course of open and public sexual conduct contrary to and in defiance of generally accepted moral principles and in disregard of the embarrassment and injuries which might be sustained by the children, then the court is justified in depriving her of the custody of the children. Schexnayder v. Schexnayder, 371 So.2d 769 (La. 1979); Beck v. Beck, 341 So.2d 580 (La.App. 2d Cir. 1977); Strother v. Strother, 248 So.2d 867 (La.App. 3d Cir. 1971); Tuggle v. Tuggle, 235 So.2d 166 (La.App. 2d Cir. 1970); Morris v. Morris, 152 So.2d 291 (La. App. 1st Cir. 1963).
The above jurisprudence satisfies us that the trial court did not abuse the broad discretion it has in a case of this nature. We affirm the award of custody to the father.

DENIAL OF HEARING ON RULE
Mrs. Shanklin argues that the trial court abused its discretion when it refused to fix a hearing date for her change of custody rule, which was filed twenty-two days after the adverse custody award. She urges us to remand with instructions to assign a hearing date. We hold that the trial court acted properly under the circumstances.
The sole ground on which Mrs. Shanklin sought to regain custody was her very recent marriage to her paramour. Even though we do not have the benefit of reasons from the trial court, we feel certain the reason it declined to hold an evidentiary hearing was because it determined the fact of Mrs. Shanklin's marriage did not justify another change of custody. Under such circumstances, no useful purpose would be served by holding a hearing to allow proof of the marriage since that fact would be insufficient to secure the requested relief.
After a considered decree of permanent custody (such as the judgment of January 24, 1979, awarding Mr. Shanklin custody of his children), the party seeking a change of custody bears a heavy burden of proving that the continuation of the present custody is so deleterious to the children as to justify removing them from the environment to which they are accustomed. Monsour v. Monsour, supra; Fulco v. Fulco, supra. But cf. Myers v. Myers, 370 So.2d 172 (La.App. 3d Cir. 1979); Bushnell v. Bushnell, 348 So.2d 1315 (La.App. 3d Cir. 1977). The fact that Mrs. Shanklin has married and thus conformed her sexual conduct to community standards does not in any way reflect upon the care Mr. Shanklin is giving his children. She must prove that the present custody is deleterious to the children and the fact of her recent marriage *1040 is not relevant. This was the obvious position of the trial court and we agree with this view. The trial court, under these circumstances, did not err. We affirm its denial of an order for a hearing to seek a change of custody. A remand is inappropriate.

ATTORNEY'S FEES
The general rule relating to the assessment of attorney's fees is that these fees are not recoverable unless provided for by statute or by contract. Nassau Realty Co., Inc. v. Brown, 332 So.2d 206 (La.1976); Hernandez v. Harson, 237 La. 389, 111 So.2d 320 (1959); Sutterfield v. Sutterfield, 354 So.2d 707 (La.App. 4th Cir. 1978). We have not been cited nor have we found any statute authorizing the payment of attorney's fees in a contempt proceeding. Accordingly, we reverse that portion of the trial court's judgment awarding attorney's fees.
For the foregoing reasons, we have affirmed the judgment awarding custody to the plaintiff-appellee, Roosevelt Shanklin, and the trial court's refusal to hear Mrs. Shanklin's change of custody rule. We have reversed that portion of the judgment on the contempt rule awarding attorney's fees. Costs of this appeal are to be divided equally between appellant and appellee.
AFFIRMED IN PART, REVERSED IN PART.