387 So.2d 654 (1980)
Gordon Leon DUFFIE
v.
Diane Laird DUFFIE.
No. 13499.
Court of Appeal of Louisiana, First Circuit.
July 7, 1980.
Writ Refused September 19, 1980.
*655 Michael J. Matthews, Gonzales, for plaintiff and appellant.
Ralph Tureau, Gonzales, for defendant and appellant.
Before COVINGTON, LOTTINGER and COLE, JJ.
LOTTINGER, Judge.
This is a rule to change custody filed by the mother against the father.[1] From a judgment awarding "provisional" custody of the nine year old boy to the mother and "physical possession" of the child to the maternal aunt and uncle, both husband and wife have appealed.
Two prime issues are before us:
(1) Can a custody decree be a "considered decree" if the trial judge who rendered the decree declares in a later custody judgment that his first decree was not "considered"?
(2) In a custody case between ex-spouses in which the maternal aunt and uncle were not parties, did the trial judge err in awarding "physical possession" of the nine year old boy to the maternal aunt and uncle and "provisional" custody to the mother?

THE FACTS
Diane Laird and Gordon Duffie were married on November 12, 1967. One child, Michael Steven Duffie, was born of the marriage on October 21, 1971. In mid-December of 1978, Diane left the matrimonial domicile and took the child with her to Tickfaw, Louisiana. She took a job in Tickfaw caring for the two children of Paul Purvis, who she later married.
On January 10, 1979, Gordon Duffie filed suit in Ascension Parish for a judgment of separation on grounds of abandonment. On the same day, Gordon signed an "affidavit and writ" in Franklin County, Mississippi, charging Diane with kidnapping of the child and grand larceny of a 1971 community automobile. Authorities arrested Diane in Tickfaw on January 15, 1979 on the two charges. Her husband, who accompanied deputies to her residence, took possession of the child. Soon thereafter, he placed the youth in the home of his wife's sister and her husband, Mr. and Mrs. Ed Ahrend of Brookhaven, Mississippi.
After spending a night in the Amite Parish Jail, Diane was taken to Franklin County, Mississippi, where she was told the charges would be dropped if she admitted herself to a Mississippi mental hospital. She stayed at the hospital for about two weeks and the charges were dropped.
Diane was never served with process of the separation suit, perhaps because the *656 husband had listed as her address the matrimonial domicile which she had abandoned. In a supplemental and amending petition filed January 31, 1979, Mr. Duffie prayed for an immediate divorce on grounds of adultery and sought permanent custody of the child. He also asked that an attorney be appointed to represent his wife and that service be made on the attorney. A court appointed attorney accepted service the next day. Mrs. Duffie was not notified of the trial, but her attorney filed a general denial and apparently represented her at the proceeding. Two witnesses, Mr. Duffie and Diane's alleged paramour, testified at the trial, and a judgment ordering the divorce was rendered. The court also gave permanent custody of the child to Mr. Duffie, subject to "reasonable visitation" of Diane. As to visitation privileges, the trial court added: "It is the finding of this court that due to the habitual intemperance of defendant herein that defendant's visitation to the aforesaid minor child be limited to the daylight hours as deemed reasonable" by Mr. Duffie.
Diane married Paul Purvis on May 11, 1979, and filed this rule on May 30, 1979.
The record reveals that Mr. Duffie left the child at the Ahrends' house soon after he obtained physical possession. There is no question that the Ahrends have provided a good and healthy environment for the boy to grow up in.
However, the record also reveals that Diane visited the child at least four times since the youth was placed at the Ahrends' house. She has also telephoned her son numerous times. Diane's relationship with her family members was poor, at best, and she felt her family and ex-husband were frustrating some of her efforts to see her child.
Mr. Duffie made numerous allegations as to Diane's abuse of alcohol and prescription drugs. His evidence, however, was riddled with hearsay and innuendo, and the trial judge correctly disregarded it.
In his reasons for judgment, the trial judge stated that "there had been no real evidence presented which would warrant a finding that [Diane] was unfit morally or otherwise to have custody of her minor child." The trial judge also noted that a psychiatrist's deposition, like the testimony in open court, "fails to prove any problem of sufficient magnitude to warrant depriving the mother of custody. The father, due to his employment and lifestyle, cannot provide for the actual physical custody of the child. In addition, the court finds him to be unduly harsh in his conduct and outlook on life and to have deliberately testified falsely under oath for the purpose of deceiving the court. Custody should therefore be vested in the mother."
"However," the trial court continued, "the child has now become accustomed to an environment which is economically, socially, morally and educationally superior to anything he has ever known. He expressed to the court in chambers after he had had opportunity to visit with his mother and new stepfather on several occasions a very strong desire to continue to live with his aunt. He went into a paroxysm of fear when the court suggested to him that perhaps he should return to live with his mother. While the court reinterates [sic] its finding that the mother is not unfit [,] the environment which she and her present husband can provide is in such marked contrast to that which the child now enjoys and has become accustomed to that it would be extremely cruel and unjust to the child to compel him to return to his mother." With that, the trial judge vested "provisional" custody in Diane and "physical possession" in the Ahrends. The court also gave "reasonable and liberal visitation rights" to Diane, consisting of visitation every other weekend from 6:00 p. m. Friday until 6:00 p. m. Sunday, Christmas, Easter, Thanksgiving and the first month of summer vacation.

SPECIFICATIONS OF ERROR
Mr. Duffie on appeal claims that the trial court erred in failing to apply the so called "double burden rule," which, if applicable, would have required Diane to prove that the present custody arrangement was deleterious *657 to the welfare of the child and that she could have provided a better environment; that the trial court's failure to apply the double burden rule resulted from an erroneous finding that the first custody decree was not a considered decree; and that the trial court erred in relying on the "maternal preference rule" in awarding Diane "provisional" custody.
Diane on appeal argues that the trial court erred in failing to follow a well established jurisprudential rule giving a parent a greater right to custody in most cases over a nonparent.

CONSIDERED DECREE
The proceeding in which Mr. Duffie obtained permanent custody of the child originally was in the nature of a confirmation of default. No transcript of the proceeding was kept, thus none is before us on appeal. Mr. Duffie claims that the statement in the trial court's judgment concerning Diane's "habitual intemperance" and limiting her visitation rights is an indication that the trial court took evidence on the custody issue and rendered a "considered decree."
This court in Stevens v. Stevens, 340 So.2d 584 (La.App. 1st Cir. 1976), held that "the party alleging the applicability of the double burden rule must show, through introduction of the transcript of the default proceedings or otherwise, that the custody issue was `considered' in the prior proceeding." Page 587. Mr. Duffie contends that, though a transcript of the default proceeding is not available, he has "otherwise" shown that the custody issue was considered. The trial court, however, found that its first custody decree was not a "considered decree."
We were unable to find in the record anything but some self-serving statements by Mr. Duffie regarding the circumstances surrounding the custody decree. The trial judge under the peculiar circumstances of this case was in a unique position to determine whether his first decree had or had not been "considered." The trial court found that Mr. Duffie had "deliberately testified falsely under oath for the purpose of deceiving the court." In his reasons for judgment, the trial judge gave no indication whether this false testimony was in the instant proceeding, or during the confirmation of default. We find nothing in the record that would lead us to believe that the trial judge was referring to this proceeding. We thus conclude he had reference to the original default hearing. Since the trial court apparently concluded its original custody decree was based on false testimony, the trial judge was correct in holding that its first decree was not a considered decree.

CUSTODY
The primary consideration in every case between parents involving child custody is the best interest of the child. La.C.C. art. 157; Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971); Shanklin v. Shanklin, 376 So.2d 1036 (La.App. 1st Cir. 1979). The trial judge's written and oral reasons for judgment reflect a deep concern on his part to do what was right in this case. Based to a large extent on a private discussion with the youth, the trial judge determined that the child's best interest lay in keeping physical possession with the maternal aunt and uncle and provisional possession with the mother, and giving reasonable and liberal visitation rights to the mother. His holding, however, runs headon into the rule laid down by the Louisiana Supreme Court in Wood v. Beard, 290 So.2d 675 (La. 1974).
The court in Wood v. Beard, supra, held that the parent has the paramount right to the custody of the child and can only be deprived of custody under compelling circumstances. In so holding, the court said at 677:
"It is in the best interest of the child of tender years to grant custody to the mother unless the mother is unfit or otherwise unsuitable. Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971) and cases there cited. In the application of this rule it is not appropriate for the court to compare the mother's home with another *658 when the mother and her home are acceptable, and then award the custody to the contestant who can provide greater advantages for the child. State ex rel. Rothrock v. Webber, 245 La. 901, 161 So.2d 759 (1964); State ex rel. Perdue v. Carkuff, 182 La. 920, 162 So. 729 (1935). The best interest of the minor is not served by denying parental custody after deciding which of two qualified, competing family groups can deliver a quality of child custody more pleasing to the court. A judicial comparison of qualified competitors for custody of a child does violence to the rule of `parental right.' (See Blow v. Lottman, 75 S.D. 127, 131, 59 N.W.2d 825 (1953): `If the mother is a fit parent she cannot be denied custody of her children even though the grandmother is better qualified to rear them.').
"When the parent competes with non-parents of the child, the parent's right to custody is superior, unless the parent is unable or unfit, having forfeited parental rights. (Citations omitted)."
The ruling of Wood v. Beard has been followed in Deville v. LaGrange, 379 So.2d 37 (La.App. 3rd Cir. 1979); Tolar v. Cunningham, 368 So.2d 1188 (La.App. 3rd Cir. 1979), writ denied 369 So.2d 710 (La. 1979); Ingram v. Saragusa, 313 So.2d 324 (La.App. 1st Cir. 1975); Mertens v. Mertens, 308 So.2d 508 (La.App. 3rd Cir. 1975), writ refused, 313 So.2d 240 (La. 1975).
It could of course be argued that by awarding provisional custody to the mother and physical possession to the Ahrends, the trial court has followed the rule set forth in Wood. However, to allow such a custody order to stand would merely be circumventing the rule of Wood, and this we will not allow. It is clear that unless the parent is unable or unfit, the parent's right to custody of the child vis-a-vis nonparents is superior.
Here there has been no finding whatsoever that the mother is unfit to care for her child. In fact, the trial judge found just the opposite. The evidence indicates that Diane is presently providing a good and healthy environment for the Purvis children, and that she and her husband are willing and able to provide a good home for her son. On the the other hand, Mr. Duffie's job and other circumstances prevent him from providing a proper atmosphere for his son.
Inasmuch as we conclude that the trial judge was in error in awarding physical possession herein, and that permanent custody should have been awarded to the mother, we will remand this case to the trial court for the limited purpose of fixing reasonable visitation privileges on the part of the father. Therefore, for the above and foregoing reasons, the judgment of the trial court is reversed, and permanent custody of Michael Steven Duffie is awarded to his mother, Mrs. Diane Laird Purvis, and this matter is remanded to the trial court for the purpose of fixing reasonable visitation privileges on the part of the father, Gordon Leon Duffie. All costs of this proceeding are to paid by defendant-in-rule, Gordon Leon Duffie.
REVERSED, RENDERED AND REMANDED.
NOTES
[1] The suit to change custody was filed as a separate proceeding by the mother rather than as a part of the original divorce and custody proceeding. Separate captions, numbers and records are a part of this record on appeal. The trial judge treated the rule to change custody, though a separate proceeding, as consolidated with the original proceeding, and rendered his judgment in the original proceeding. We use the caption of the original proceeding, and treat the pleading to change custody as if it had been filed in that suit.