430 So.2d 304 (1983)
Joseph W. MORGAN, Plaintiff-Appellant,
v.
Joan HUDDLESTONE, Defendant-Appellee.
No. 82-712.
Court of Appeal of Louisiana, Third Circuit.
April 13, 1983.
Writ Denied June 17, 1983.
*305 Boagni, Genovese & Hebert, James T. Genovese, Opelousas, for plaintiff-appellant.
Cabes, Tracy & Perret, Hank Perret, Lafayette, for defendant-appellee.
Before DOMENGEAUX, LABORDE and YELVERTON, JJ.
YELVERTON, Judge.
This appeal by the father of 13-year-old Robert Morgan questions the trial court's denial of a rule to change custody. A second issue presented by the appeal is the failure of the trial court to hear expert testimony of psychologists regarding the custody issue. We find no error.
An unusual factual circumstance is presented in this case because the mother is a citizen of England and the father a citizen of the United States.
Joseph W. Morgan met and married Joan Huddlestone in England in 1964. The first year of the marriage was spent in England where Morgan was serving a military assignment. The couple moved to the United States in 1965 and Morgan left the service. After traveling about they eventually settled in Lafayette, Louisiana. They had three children, the son Robert (the only child whose custody is at issue), and two daughters ages 10 and six.
The couple separated in November 1980. Morgan moved to Atlanta, Georgia, and Joan remained in Lafayette with the children. In late 1981 Morgan sued for divorce based on living separate and apart for one year. He asked that the mother be allowed to retain the custody of the children. A divorce was granted in November 1981 granting legal custody of the children to the mother and recognizing the father's right to reasonable visitation.
Throughout the marriage Joan Huddlestone retained strong ties with the family she left behind in England. As the children were growing up she took them to England for extended and frequent vacations. In alternate years she and the children sometimes spent as long as three summer months at a time with her family. A good relationship developed between the children and their English relatives, and particularly between young Robert and his English grandfather.
For nearly two years following the separation the children lived with their mother in Lafayette and the father lived in Atlanta. He visited the children in Lafayette with some regularity. What with the added expenses of living apart and Morgan's remarriage almost immediately after the divorce, Joan found it necessary to get employment to supplement alimony and child support. Immediately after her husband's remarriage Joan began to think about taking the children and returning to her native England where she could enjoy both the economic and the moral support of her family. The decision was made to do this in the early summer of 1982.
Young Robert, at first agreeable, apparently changed his mind about wanting to move to England about two weeks before the scheduled departure date. He expressed this change of mind while talking to his father on the telephone. He told his father he wished to live with him.
The youth's change of mind prompted Morgan to file the rule to change custody which is the subject of this appeal.
The rule to change custody was filed on August 18, 1982, and heard 12 days later on August 30, after having been continued twice.
We will now consider the two assignments of error.

The Refusal to Change Custody
Under questioning by the trial judge in chambers, the child explained his desire to remain in the United States with his father. One reason given for the preference was the difference in sports emphasis between the two countries. In addition, Robert said he got along better with his father than he did with his mother.
*306 The trial court decided that it was in the best interest of Robert that he continue in the custody of his mother. In his written reasons, the trial court took into consideration Robert's stated preference to live with his father, but he regarded Robert's recent change of mind as illustrative of the vagaries of youth. The trial court expressly noted Robert's familiarity with English life, his ties to his maternal family, and the fact that separation from his mother would also mean separation from his sisters. The trial court was impressed by Robert's intelligence and his upbringing. The lower court noted Robert's testimony that he attended the Episcopal Church with his mother on a regular basis, but that he did not attend church with his father during visitation periods. In fact, the boy was unable to tell the judge his father's religion. Finally, the court took into consideration that the child has always lived with his mother, and was in her custody for the approximate two years between the actual separation and the decision to move to England. The father's new wife did not appear at the hearing on the rule to change custody, and her attitude toward custody of Robert was an uncertain element in the trial court's considerations.
After having given weight to Robert's stated preference, the trial court still believed that it was in the best interest of Robert to remain with his mother. A child's preference is to be considered but is not controlling in the determination of custody. Weyerman v. Carter, 365 So.2d 1147 (La.App. 3rd Cir.1978); Hebert v. Hebert, 255 So.2d 630 (La.App. 3rd Cir.1971).
An appellate court is required to give great weight to the determination of the trial judge in custody cases, and we can overturn a determination only when there is a clear abuse of discretion. Bordelon v. Bordelon, 390 So.2d 1325 (La.1980). Based on our review of the record and the trial court's reasons, we agree with the decision to leave Robert in the custody of the mother.

The Action of the Trial Court Regarding Expert Testimony
The hearing was expedited because the family was packed, their belongings had already left for England, their reservations and tickets were in hand and their departure was imminent.
During the short time elapsing from the filing of the rule until its hearing, counsel for the father arranged for a psychologist to testify. Denied access to this expert's report, counsel for the mother filed rules returnable on the same date as the hearing for a change of custody, seeking to exclude the testimony of the psychologist and also requesting that counsel for the father be held in contempt for failure to divulge the expert's report. Counsel for the mother during the short remaining time arranged for another psychologist of her choice to be present for testimony.
The record is silent as to what disposition, if any, was made of the rule to quash the testimony of the father's expert and the contempt rule against counsel. The record contains a colloquy between the court and both counsel at the very beginning of the proceeding during which the court ruled, with the apparent consent of both attorneys, that neither psychologist would be heard. The record is not entirely clear on this point but we construe this ruling to have been the result of a compromise under the terms of which Robert would testify in chambers under questioning by the court alone and the expert psychologists would be released. The court then announced that if it felt an expert was needed in the matter at the conclusion of the trial, it would "order its own expert." Counsel for appellant reserved an objection to that ruling and then, in the same breath, said: "We'll release the experts, Your Honor."
We do not know what would have been the nature of the testimony of the experts. There is no indication in the record that Robert suffered from psychological aberrations requiring treatment. On the contrary, the testimony of both parents was that he is normal. Apparently, the psychologists were prepared to offer their opinions, *307 which we presume would have differed, as to what was in Robert's best interest.
After hearing the remaining witnesses called by the parties the court interrogated Robert in chambers, then announced that it was ready to rule in the case, and did so.
We find no manifest error in the trial court's ruling pertaining to the testimony of the psychologists. This is because we construe the colloquy in the record, in the light of the procedural setting in which the case went to trial, as indicating that both counsel acquiesced in the ruling. At first, counsel for appellee did not want the child to testify at all but was willing for both experts to testify. Appellant wanted the child to testify in open court and also he wanted the testimony of his expert. The trial court suggested an alternative: the court would interrogate the child in chambers (out of the presence of the parents and counsel) and neither expert would be called. To this suggestion both counsel seemingly agreed. It was only when the court remarked that it reserved the right to order an expert if needed that counsel for appellant indicated an objection. The trial court apparently placed the same construction on the colloquy as do we.
It would have been error for the trial court to have arbitrarily refused to hear the expert witnesses summoned by the parties. The colloquy in the record does not suggest an arbitrary refusal, but rather an honest and reasonable interpretation of counsel's remarks as indicating their endorsement of the court's suggested compromise that its interrogation of the youth supplant the psychologists' opinions regarding proper custody. It was Morgan's counsel who made the announcement that the experts would be released, and if in fact he objected to their release, it does not appear in the record that there was an enunciation of that objection of sufficient clarity to put the trial court on notice that a ruling on that objection was required. We find that the trial court reasonably believed that both counsel acquiesced in the release of the experts.
Nevertheless, we might still remand in the interest of justice (see Heymann v. Lewis, 414 So.2d 787 (La.App. 3rd Cir.1979) on rehearing), but for the fact that appellant has the right to bring a new action for a custody change. We recognize the practical and perhaps legal problems that a new action will encounter, assuming Joan and the children are now in England, but the same problems will likewise be encountered if we remand.
For all of the above reasons, the judgment of the trial court maintaining custody of Robert Morgan with his mother, Joan Huddlestone, is affirmed at appellant's costs.
AFFIRMED.