455 So.2d 705 (1984)
Mrs. Diane Waguespack wife of Jacques LEGRAND
v.
Jacques LEGRAND.
No. 83-CA-850.
Court of Appeal of Louisiana, Fifth Circuit.
August 28, 1984.
Rehearing Denied September 19, 1984.
Russell J. Schonekas, Tucker & Schonekas, New Orleans, for plaintiff-appellant Diane Waguespack LeGrand.
Ernest V. Richards, IV, Metairie, for defendant-appellee Jacques LeGrand.
Before BOUTALL, CHEHARDY and CURRAULT, JJ.
BOUTALL, Judge.
This case arises from a rule for change of custody brought by the non-custodial divorced parent. From a judgment ordering that custody be changed, the parent who has lost custody appeals.
Diane Waguespack LeGrand and Jacques LeGrand were divorced in 1973. Mrs. Le-Grand was awarded custody of the couple's three children, Jacques LeGrand, Jr., Christine LeGrand, and Nicole LeGrand, with visiting rights to Mr. LeGrand. In September, 1978 and again in August, 1979 the mother filed motions regarding past due alimony and visitation, while the father moved to gain custody. On September 7, 1979, the court rendered judgment ordering that custody of Jacques, Jr. be granted to the father while the daughters were to remain with their mother. The father was found to be in contempt for failure to pay support, and visiting hours were changed. In May, 1982 Mr. LeGrand petitioned for custody of Christine and Nicole, but the rule was dismissed when no one appeared for the hearing.
The present litigation began in December, 1982, when Mr. LeGrand again filed a rule for custody, on grounds that Mrs. Le-Grand continually left the girls "alone and unattended at all hours of the day and *706 night," that they wished to live with their father, and that it was detrimental to their well being to remain with their mother because of the emotional and psychological strain existing between daughters and mother. Mrs. LeGrand countered with a rule for contempt, alleging that the father violated the conditions of visitation in several ways, including taking Christine, the older daughter, to Las Vegas without her knowledge or permission. Following a hearing of both motions, on September 23, 1983, the trial judge ordered a change of custody, awarding permanent custody of Christine and Nicole to Mr. LeGrand, and he dismissed the rule for contempt against the father. Mrs. LeGrand appeals the judgment.
The issues raised by the appellant are: (1) whether the appellee carried his burden of proving the conditions under which the children were living had changed significantly since the original decree and that the conditions were now detrimental to them; and (2) whether the trial judge correctly gave great weight to the wishes and desires of the children in awarding custody to the father.
In December, 1982, when this litigation arose, LSA-C.C. art. 157 read as follows, in pertinent part:
"A. In all cases of separation and divorce, and change of custody after an original award, permanent custody of the child or children shall be granted to the husband or the wife, or to both jointly by agreement of both the husband and wife, in accordance with the best interest of the child or children; however, an award of joint custody may be granted only when the husband and wife are both domiciled in the state of Louisiana. If either parent changes his or her domicile to another state, the other may petition for sole custody.
"No preference shall be given on the basis of the sex of the parent in cases where custody is awarded to only one parent. Such custody hearing may be held in private chambers of the judge."
The legislature had amended article 157 in 1977 to provide for permanent custody after separation or divorce to either husband or wife, "in accordance with the best interest of the child or children." A 1979 amendment to the article codified the jurisprudence to make the best interest requirement applicable to change of custody cases as well as to original awards.
The Supreme Court considered the standard of proof in change of custody cases in light of the 1979 amendment in Bordelon v. Bordelon, 390 So.2d 1325 (La.1980). In an earlier case, Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971), the court set out four principles relevant to custody changes, as summarized in Bordelon v. Bordelon, supra, at 1328:
"... (1) The paramount consideration in determining to whom custody should be granted is always the welfare of the children. (2) The general rule is that it is in the best interest of the children to grant custody to the mother, especially when they are of tender years, unless the mother is morally unfit or otherwise unsuitable. (3) When a trial court has made a considered decree of permanent custody, the party seeking a change of custody has a heavy burden of proving that the present custody is deleterious to the children as to justify removing them from the environment to which they are accustomed. (4) The decision of the trial judge is entitled to great weight. Eventually, the first principle concerning the welfare of the children came to be construed as requiring custody changes to be in the best interest of the children.... [citations omitted.]"
The Bordelon court interpreted legislative intent in the 1979 amendment to article 157 as removing the Fulco burden. It went on to explain, at 1328:
"... In requiring proof that continuation of present custody was deleterious to the child before permitting a change of custody, Fulco, supra, we were, in substance, limiting the rule of the best interest of the child to only those situations where the danger of physical or psychological harm to the child required *707 a change of custody. In amending the child custody statute, the legislature gave no indication that such a stringent substantive limitation on custody changes was applicable, and this Court is in no position to read such a requirement into the statute. Thus, the best interest of the child, and not the possibility of harm, is the sole criterion applicable to change of custody cases."
The Bordelon court reaffirmed the importance of stability of environment in a determination of the child's best interest. It said, at 1329, that:
"... A court should consider the prior history of the child's custody when asked to change custody. Generally, it might not be in the best interest of a child to be regularly moved from parent to parent. But this is a single consideration to be weighed with all other factors relevant to a determination of the best interest of the child."
See also Ashley v. Gasper, 392 So.2d 178 (La.App. 2nd Cir.1980). The court also reaffirmed the great weight placed on the trial judge's determination, which may be overturned only where there is a clear abuse of discretion. Fulco, supra; Cleeton v. Cleeton, 383 So.2d 1231 (La.1980).
The weight placed upon the wishes or desires of the child as to whether custody should be changed varies from case to case. In none of the cases has custody been changed solely on that basis. The most recent Supreme Court case, Johnston v. McCullough, 410 So.2d 1105 (La.1982), held that stability and continuity were more important considerations than the wishes of a twelve-year-old boy and his father who sought custody. This principle was reiterated in Morgan v. Huddlestone, 430 So.2d 304 (La.App. 3rd Cir.1983) in the case of a thirteen-year-old boy who wished to leave his home with his mother and sisters to live with his father. However, in Theriot v. Huval, 413 So.2d 337 (La.App. 3rd Cir.1982), the court placed more weight on the preferences of the children in ordering a change of custody. The court considered carefully the home environment available under placement with either parent, and felt the change was in the children's best interest. They did not wish to be uprooted from their home town when their mother moved to another town, and one daughter was antagonistic to the mother's paramour. The court stated at 341:
"... [I]t is proper to give more than casual consideration to the wishes of the children in light of their feelings of insecurity which would be experienced if placed with a certain parent ...."
In the case before us the plaintiff argues that the father failed to carry his burden of proving that present custody was deleterious to the girls' welfare and that there had been a material change in their circumstances. The decisions relied upon by the plaintiff were rendered prior to Bordelon v. Bordelon, supra. Counsel cited Brummett v. Hudson, 338 So.2d 124 (La.App. 1st Cir.1976); Monsour v. Monsour, 347 So.2d 203 (La.1977), and Shanklin v. Shanklin, 376 So.2d 1036 (La.App. 1st Cir.1979). The facts and trial in Shanklin took place prior to the enactment of the 1979 amendment to LSA-C.C. art. 157. As discussed above, the standard of proof has been relaxed somewhat.
It is difficult to determine from the rather meager transcript whether the father did successfully prove, as required by the current law, that a change in custody is in the best interest of the children. Testimony was heard in open court from Diane LeGrand, Jacques LeGrand, Jr., and Donna Lahners. Christine and Nicole testified before the judge alone in his chambers, as is permitted by article 157, over the objection of counsel for Mrs. LeGrand.
The trial judge gave oral reasons for his decision and indicated it was primarily based upon the girls' testimony in chambers. He stated that both girls told him they would run away if ordered to remain with their mother. He said:
"... At fifteen and a half and a child of her [Christine's] intelligence, the ball game's over ...." *708 Nicole, age thirteen, told him that if custody were granted to her father she would not even wish to visit her mother.
The attorneys failed to elicit a clear picture of the girls' home and school life while in their mother's custody. The record is not convincing as to the truth of Mr. Le-Grand's allegation that the girls were left alone in the house "at all hours." Mrs. Donna Lahners, a friend of Mr. LeGrand who lived four blocks away testified that the girls called her frequently at night because they were alone and frightened. When asked to be more specific about time, she said they called anywhere from 8:00 p.m. to 11:00 p.m. However, Mrs. LeGrand testified that in fact both girls on occasion did baby-sitting outside the home, and Nicole (age thirteen) was allowed to sit until 11:00 p.m. The mother worked nearby, and was available by telephone. On the two week nights when she worked until 9:00 p.m. Mrs. LeGrand came home to prepare the evening meal and then returned to work.
The record does reflect that the relationship of mother and daughters has become one of animosity and tension. Nine days before the trial Christine (age fifteen) left home to stay in a hotel with her older brother, communicating only with her father, and missing school. While there are strong indications that Christine's leaving was instigated by the father, there are no indications she left unwillingly. The mother admitted to slapping Christine on occasion for being rude to her, and during a recess in the trial she slapped Nicole for disobeying her by going outside with her father. Mrs. LeGrand complained in her testimony that the father undermined her attempts to discipline the girls. Her testimony confirms the trial judge's conclusion that she had lost control of the girls.
The plaintiff argues that the court was incorrect in basing his decision to change custody on the girls' wishes. The judge did not divulge specifics of the girls' testimony other than their saying that they would run away if the mother's custody continued. From his oral reasons for judgment, we deduce that his interview with the girls in chambers convinced him that placement with the father was in the best interest of the children. He said:
"... And I told them that with a change of custody maybe things would change their opinions, their attitudes ...."
Although we are not able to review the girls' statements, we must afford the finding of the trial judge great weight. We believe he was correct and that the girls' best interest would be served by relief from the atmosphere of tension and conflict. Accordingly, we affirm that portion of the judgment awarding permanent custody of Christine LeGrand and Nicole Le-Grand to their father, Jacques LeGrand.
Counsel for the appellant complains in his brief and argument of the judge's failing to find the father in contempt for violation of the conditions of visitation, although he does not list the dismissal of the appellant's rule as an issue before this court as reason for reversal.
The applicable articles of the Louisiana Code of Civil Procedure are as follows, in pertinent part:
"Article 221. A contempt of court is any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority.
"Contempts of court are of two kinds, direct and constructive."
* * * * * *
"Article 224. A constructive contempt of court is any contempt other than a direct one.
"Any of the following acts constitutes a constructive contempt of court: ...
"(2) Willful disobedience of any lawful judgment, order, mandate, writ or process of the court:"
The penalty permitted by law for contempt is set out in LSA-R.S. 13:4611: a fine of not more than $250.00 or imprisonment for not more than thirty days or both. Considerable conflict in the jurisprudence has existed over the proper procedure for seeking review of a judgment of contempt, *709 whether by direct appeal or by application for supervisory writs.[1] Additionally, dependent on the nature of the case, it is important that a determination be made as to the nature of the contempt proceeding, whether civil or criminal. The test evolved is to look to the purpose of the sentence imposed: whether to coerce compliance with the court order or simply to punish for wilful disobedience of the court order.[2]
We consider that the determination of the civil or criminal nature of the contempt proceeding is paramount in a case such as this wherein the trial judge has refused to find the defendant in contempt. Rarely have the appellate courts entertained an appeal under such circumstances.
In Kent v. Stewart, 413 So.2d 583 (La. App. 1st Cir.1982), the court entertained and reviewed a contempt proceeding against a group of property owners which arose from an alleged violation of an injunction. In a consideration of the merits, the court affirmed the trial judge's finding of no violation of the injunction, contempt of court, or malicious harassment. On the other end of the spectrum, in the case of LeBlanc v. LeBlanc, 404 So.2d 530 (La. App. 4th Cir.1981), a case involving custody rights, the court held that an appellant father was without standing to appeal the court's refusal to hold the mother in contempt.
In Robertson v. Robertson, 258 So.2d 125 (La.App. 2nd Cir.1972), a case involving alleged interference with visitation rights, the court held that the trial judge's denial of contempt penalties was solely within his authority, stating at page 127:
"... A proceeding against a party to show cause why he should not be punished for contempt in refusing to obey the orders of a court is not designed for the benefit of a litigant, though infliction of a punishment may inure to the benefit of the mover in the rule. The object of the proceeding is to vindicate the dignity of the court. State ex rel. Duffy & Behan v. Civil District Court for Parish of Orleans, 112 La. 182, 36 So. 315 (1904). The court below did not feel its dignity had been impeached, and it is not our place to say otherwise."
In our assessment of these cases, we would distinguish between the apparently apposite treatment accorded these appeals by referring to the nature and purpose of the contempt proceeding.
In Kent the proceeding there is in connection with the protection of rights resulting from an injunction that had been issued and whether certain actions of the defendants were in violation of the injunction. As opposed to that in Robertson and LeBlanc the effects of the activity complained of were finished and the sole purpose of the contempt proceeding was to punish.
The case before us is based upon allegations of wilful violation of visitation privileges by the father of children. Even if the allegations were proven, a judgment of contempt could not restore to the mother her violated rights and could serve only to punish the father for past acts. Additionally, if we were to reverse the judgment of contempt, we would simply remand the matter to the trial court to impose punishment under the statutes. To reiterate the rule discussed above, when the purpose of the contempt sentence is simply to punish, the contempt proceeding is in the nature of a criminal proceeding. In this case it is clear that punishment is the sole purpose and this is in the nature of a criminal proceeding. It is basic law that when a defendant is acquitted on the merits the judgment is not appealable. See Code of Criminal Procedure Article 912. Simply put, this court does not have jurisdiction to entertain such an appeal.
For the reasons above stated, the judgment appealed is affirmed at appellant's costs.
AFFIRMED.

*710 ON APPLICATION FOR REHEARING.
PER CURIAM.
We consider the reference to Civil Code Article 157 and Star Chamber proceedings to be disrespectful and frivolous. Courts have frequently conferred with children outside the presence of the parents other than in open court. See Vidrine v. Demourelle, 363 So.2d 943 (La.App. 3rd Cir. 1978); Duffie v. Duffie, 387 So.2d 654 (La. App. 1st Cir.1980); Prattini v. Daughtry, 396 So.2d 447 (La.App. 4th Cir.1981); Plemer v. Plemer, 436 So.2d 1348 (La.App. 4th Cir.1983); Granger v. Ortego, 434 So.2d 663 (La.App. 3rd Cir.1983). See also attached copy of Acts 1981, No. 283, which amended LSA-C.C. 157.
The motion for rehearing is denied.

APPENDIX
Act 283

ACT No. 283

House Bill No. 147.

By: Messrs. Byrnes and Fernandez.

AN ACT
To amend and reenact Article 146, Paragraph A of Article 157, and Article 250 of the Louisiana Civil Code and to amend and reenact Articles 4031 and 4262 of the Louisiana Code of Civil Procedure, relative to custody and tutorship of children pending litigation and after separation or divorce, to provide for joint custody, to provide for natural cotutorship, and otherwise to provide with respect thereto.
Be it enacted by the Legislature of Louisiana:
Section 1. Article 146, Paragraph A of Article 157, and Article 250 of the Louisiana Civil Code are hereby amended and reenacted to read as follows:
Art. 146. Custody of children pending the litigation
Art. 146. A. If there are children of the marriage whose provisional keeping is claimed by both husband and wife, the suit being yet pending and undecided, it shall be granted to the husband or the wife in accordance with the best interest of the children, or, if both husband and wife agree to joint custody and the court deems it in the best interest of the children, the court may award joint custody. In all cases, the court shall inquire into the fitness of both the mother and father and shall award custody to such parent or to both parents, if they agree to joint custody, as the court finds will in all respects be in accordance with the best interest of the child or children. Such custody hearing may be held in private chambers of the judge.
B. An award of joint custody shall be made only when both husband and wife are domiciled in the state of Louisiana. If either parent changes his or her domicile to another state, the other may petition for sole custody. For purposes of this Article "joint custody" shall mean the husband and wife may share the physical custody of children of the marriage and shall enjoy the natural cotutorship of such children in accordance with Article 250.

* * * * * *
Art. 157. Custody and tutorship of children; visitation rights of grandparents
A. In all cases of separation and divorce, and change of custody after an original award, permanent custody of the child or children shall be granted to the husband or the wife, or to both jointly by agreement of both the husband and wife, in accordance with the best interest of the child or children; however, an award of joint custody may be granted only when the husband and wife are both domiciled in the state of Louisiana. If either parent changes his or her domicile to another state, the other may petition for sole custody.
No preference shall be given on the basis of the sex of the parent in cases where custody is awarded to only one parent. Such custody hearing may be held in private chambers of the judge.
In all cases in which the custody of the child or children is awarded to one parent, the parent with legal custody shall of right *711 become natural tutor or tutrix of said child or children to the same extent and with the same effect as if the other party had died. In all cases in which the custody of the child or children is awarded jointly to both parents, they may share the physical custody of the child or children and shall be entitled to become the natural cotutors of such child or children in accordance with Article 250.

* * * * * *
Art. 250. Persons entitled to tutorship
Art. 250. Upon the death of either parent, the tutorship of minor children belongs of right to the other. Upon divorce or judicial separation from bed and board of parents, the tutorship of each minor child belongs of right to the parent under whose care he or she has been placed or to whose care he or she has been entrusted; however, if the parents are awarded joint custody of a minor child, then the cotutorship of the minor child shall belong to both parents, with equal authority, privileges, and responsibilities, unless modified by agreement of the parents and approved by the court awarding joint custody.
All those cases are called tutorship by nature.

* * * * * *
Section 2. Articles 4031 and 4262 of the Louisiana Code of Civil Procedure are hereby amended and reenacted to read as follows:
Art. 4031. Minor domiciled in the state
A petition for the appointment of a tutor of a minor domiciled in the state shall be filed in the district court of the parish where the surviving parent is domiciled, if one parent is dead, or in the parish where the parent or other person awarded custody of the minor is domiciled, if the parents are divorced or judicially separated.
If the parents who are divorced or judicially separated are awarded joint custody of a minor, they shall petition jointly for appointment as cotutors in the district court of the parish in which the proceedings for divorce or judicial separation were instituted.

LSA-C.C. 157
Art. 157. Custody of children; visitation rights of grandparents
A. In all cases of separation and divorce, and change of custody after an original award, permanent custody of the child or children shall be granted to the parents in accordance with Article 146.
B. If subsequent to the granting of a divorce or separation one of the parties to the marriage dies and is survived by a minor child or children of the marriage, the parents of such deceased party may have reasonable visitation rights to the child or children of the marriage during their minority, if the court in its discretion finds that such visitation rights would be in the best interests of the child or children.
Amended by Acts 1970, No. 436, § 1; Acts 1977, No. 448, § 1; Acts 1979, No. 718, § 1; Acts 1981, No. 283, § 1; Acts 1982, No. 307, § 1, eff. Jan. 1, 1983.

Construction and Effective Date1982 Amendment
Sections 3 and 4 of Acts 1982, No. 307 provide:
"Section 3. The provisions of this Act shall not be construed to automatically modify existing custody orders and agreements in effect on January 1, 1983.
"Section 4. The provisions of this Act shall be effective on January 1, 1983."
Acts 1972 Regular Session No. 4, [R.S. 9:572], provides:
"If one of the parties to a marriage dies and is survived by a minor child or children of the marriage, the parents of such deceased party may have reasonable visitation rights to the child or children of the marriage during their minority, if the court in its discretion finds that such visitation rights would be in the best interests of the child or children."
1979 Amendment: In par. A added "without any preference being given on the basis of the sex of the parent", substituted *712 "may be held" for "shall be held", and deleted, before "The party under", "In no event shall the pendente lite custody rights presently existing be affected by this Act."
1981 Amendment: Rewrote par. A which previously read:
"A. In all cases of separation and divorce, and changes of custody after an original award, permanent custody of the child or children shall be granted to the husband or the wife, in accordance with the best interest of the child or children, without any preference being given on the basis of the sex of the parent. Such custody hearing may be held in private chambers of the judge. The party under whose care the child or children is placed, or to whose care the child or children has been entrusted, shall of right become natural tutor or tutrix of said child or children to the same extent and with the same effect as if the other party had died."
On authority of LSA-R.S. 24:253, in paragraph A, as contained in Act 283 a second undesignated paragraph was run into the first paragraph, a third undesignated paragraph was designated paragraph B, and former paragraph B was redesignated as paragraph C.

* * * * * *
NOTES
[1] For a detailed discussion of this issue see City of Monroe v. Evans, 385 So.2d 912 (La.App. 2nd Cir.1980) and cases cited therein.
[2] See State v. Austin, 374 So.2d 1252 (La.1979); Goins v. Goins, 437 So.2d 947 (La.App. 2nd Cir.1983); State v. Hope, 449 So.2d 633 (La.App. 1st Cir.1984), and cases cited therein.