BOUTALL, Judge.
This is a child custody matter. From a judgment ordering joint custody of a minor daughter, previously in the sole custody of her mother, the mother has taken this appeal. - We reverse.
Wayne Donaldson and Karen Keller Donaldson were divorced on October 7, 1976. The custody of their daughter, Kathy, born in August, 1970, was granted to the mother. Except for a rule filed in 1978 to set visitation privileges, no litigation regarding custody took place until March 1, 1983, when the father filed a rule for joint custo *617 dy. The matter was heard on April 11, 1983 and continued. On May 4, 1983 the judge interviewed Kathy alone in chambers and asked the attorneys to submit a proposal for joint custody either separately or in concert. Because the mother opposed joint custody she did not submit a plan. The judge took the matter under advisement and rendered judgment on July 27, 1983, setting out a plan for joint custody that incorporated most of the provisions of the father’s proposal and awarding child support to the mother. The judgment awarded physical custody to the father for the school year and to the mother for the summer months, except for the week before the first day of school, subject to visiting rights of the noncustodial parent during each period. We note that the mother resides in Baton Rouge and the father in Jefferson Parish. The mother was to receive $100 per month for the period that the father had custody and $200 per month when Kathy resided with her. This appeal followed.
Counsel for the appellant raises four issues: whether joint custody is mandatory under LSA-C.C. art. 146; whether the power of the judiciary to decide questions of custody has been usurped; whether a prior award can be changed, because of an amendment to the codal article, without a showing of the custodial parent’s unfitness and/or detriment to the welfare of the child; whether in this case the court based his decision solely upon the child’s preference.
We first consider the applicable law as to joint custody. LSA-C.C. art. 157 was amended in 1982, effective January 1, 1983, to provide that all custody awards shall be made in accordance with article 146. Article 146 was amended in the same act to provide a rebuttable presumption that joint custody is in the best interest of the child, unless the parents agree to an award of custody to one parent or the court finds that joint custody is not in the child’s best interest. Section F of the amended article provides that any existing custody order-“may be modified at any time to an order of joint custody in accordance with the provisions of this article.” Article 146 was again amended by Acts 1983, No. 695, so that paragraph C read as follows:
“C. There shall be a rebuttable presumption that joint custody is in the best interest of a minor child.
“(1) However, the parents may agree to an award of custody to one parent.
“(2) The presumption in favor of joint custody may be rebutted by a showing that it is not in the best interest of the child, after consideration of evidence introduced with respect to all of the following factors: ...” [A list of twelve factors, (a) through (1), follows.]

“(3) For the purpose of assisting the court in making a determination whether an award of joint custody is appropriate, the court may direct that an investigation be conducted.”
In a decision handed down by the Louisiana Supreme Court, on September 10,1984, Turner v. Turner, 455 So.2d 1374 (La.1984), rehearing denied, the Court applied the guidelines contained in article 146(C)(2)(a)-(¿), even though the effective date of the amendment was after the judgment under review, dated April 27, 1983. The Court explained its reasoning at p. 1377, fn. 2:
“... the substantive provisions of the law were not changed: the best interest analysis still applied and joint custody still was presumed. The checklist was added as clarifying legislation to provide guidance for the courts, and can be applicable in the present ease.”
In the Turner case, the Court found that joint custody was not in the best interest of the children and vacated an order modifying an existing joint custody plan. Because the parents had been unable to work cooperatively in the children’s interest, the Court remanded the case for the trial judge to award sole custody and ordered him:
“... not to render a joint custody decree or extensive visitation privileges to the noncustodial parent, absent a clear showing by both of the parties that they are *618 willing and capable of serving the children’s best interest_” Turner v. Turner, supra, at p. 1381.
Turner v. Turner provides a thorough discussion of LSA-C.C. art. 146, as amended. It interprets legislative intent to be that joint custody is the preferred custodial arrangement, but that it is not mandatory and the power of the trial judge in custody decisions as not been eroded. The Court said, at p. 1379:
“The trial judge sits as a sort of fiduciary on behalf of the child, and must pursue actively that course of conduct which will be of the greatest benefit to the child. It is the child’s emotional, physical, material and social well-being and health which are the judge’s very purpose in child custody cases. He must protect the child from the harsh realities of the parents’ often bitter, vengeful, and typically highly emotional conflict. The legislature has mandated that the judge shall look only to the child’s interests.”
The Court went on to discuss whether the rebuttable presumption that joint custody is in the child’s best interest means that the article compels such an award. It said, at p. 1379 et seq.:
“... This presumption has caused some confusion. Some lower courts seem to believe that the article requires granting joint custody. Such is not the case; the article clearly provides that there is only a presumption in favor of joint custody, and that it may be rebutted upon a proper showing that a different arrangement is in the child’s best interest. Such a showing now must include a consideration of eleven specific, enumerated factors, plus any “other factor” which the trial court deems to be relevant. C.C. 146(C)(2)(a)-(l). Article 146 provides further that ‘the burden of proof that joint custody would not be in the child’s best interest shall be on the parent requesting sole custody.’ C.C. 146(A)(2). This provision does not create any extraordinary burden on the party requesting sole custody.
“As in any matter in which there is a rebuttable presumption, the burden rests with the party challenging the presumption to convince the fact-finder that his proposed conclusion is more correct than the presumed one. A presumption does not have any probative value, but merely provides the fact-finder with a conclusion in the absence of proof to the contrary. ...
“The article 146 presumption only compels the judge to award joint custody in those cases where other things are equal; or where there is insufficient evidence to rebut the presumption; or whenever neither parent alone would be able to manage a sole custody arrangement, and where it cannot be shown that it would be detrimental to the child to remain in parental custody. Effectively, the presumption only provides the judge with a first choice, which choice must be rejected in the face of evidence which tends to disprove the conclusion. In such a case, it becomes necessary for the other party to re-establish the propriety of the presumption’s conclusion.”
In two recent cases decided prior to Turner v. Turner, supra, the courts found joint custody not to be in the best interest of the child. In Lachney v. Lachney, 446 So.2d 923 (La.App. 3rd. Cir.1984) the Court based its judgment primarily on two factors: the long duration of the child’s living with her father and grandparents and the distance between the two parents’ residences, the father living in South Carolina and the mother in Louisiana. In Kincaide v. Kincaide, 444 So.2d 651 (La.App. 1st Cir.1983), joint custody was held not to be in the child’s best interest because the parents were unable to agree upon basic issues concerning his education and rearing. The Court also felt that a new custody situation would be harmful as the child had had a very difficult time adjusting to the divorce.
Having determined that the power of the trial judge in custody decisions has not been eroded by amendments to the custody laws and that joint custody is not *619 mandatory, we next consider the impact of joint custody as the favored custodial arrangement upon prior rules regarding a change of custody. Our particular concern is the situation of a change from one sole parent to joint custody, as in the case before us.
Prior to the 1977 amendment of LSA-C.C. 157, a party seeking a change of custody was required to prove that the existing custody arrangement was so detrimental to the child as to justify removing him from his accustomed environment. Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971). In Bordelon v. Bordelon, 390 So.2d 1325 (La.1980) in which the mother’s moral fitness was at issue, the Supreme Court abrogated the Fulco rule as to burden of proof, stating that there was no longer such an inflexible rule and that:
“... [T]he best interest of the child, and not the possibility of harm, is the sole criterion applicable to change of custody cases.”
Under the 1982 amendment to LSA-C.C. art. 146, the previous requirement that the court “shall inquire into the fitness of both the mother and father” was eliminated. However, the 1983 amendment includes economic capacity, moral fitness, and mental and physical health of the parents in the twelve factors to be considered in determining whether or not joint custody is in the child’s best interest.[1] The twelve factors in article 146(C) now constitute the appropriate standard for all changes of custody cases and, as in Turner v. Turner, supra, we apply the article as amended to the case before us, retrospectively.
In the case at hand, the trial judge supplied no reasons for judgment. However, it is apparent that he believed that joint custody was mandatory. In a hearing held on June 29, 1983, the two attorneys appeared before the trial judge, having been charged by the court to attempt to come to an agreement on a joint custody plan. The judge made the following remarks regarding his decision:
“... [Kathy’s] a lovely child, she’s a beautiful child, she deserves the love and attention of both of those parents and she’s very very fortunate to have a mother and father such as she has because it’s obvious that the parents love this child very much. I understand that she has an A average for the past year in school and it certainly speaks extremely well for the care, the love and attention that her mother has given her. I think this is a difficult decision to have to make. I said on more than one occasion that the most difficult job that a district judge has is dealing with custody cases and the legislature certainly hasn’t made that any easier by the adoption of this so called joint custody action where it mandates that a district judge has to do certain things." [Emphasis supplied.]
*620 We are mindful of the great weight to be accorded to the determination of the trial judge in custody matters, and that his judgment is to be overturned only when there is a clear abuse of discretion. Bordelon v. Bordelon, supra; Fulco v. Fulco, supra; Cleeton v. Cleeton, 383 So.2d 1231 (La.1980). In this case, we find that the trial judge’s conclusion that joint custody is mandatory is clearly wrong.
The custody plan in the judgment for all practical purposes represents a change from sole custody of the mother to sole custody of the father, in light of the distance between the parents’ residences. As the mother lives in Baton Rouge and the father in Jefferson Parish, the custody plan would mean a rupture of long-standing ties and a change in nearly every aspect of the child’s life. Kathy will live with her father more than nine months of the year. During that time the mother may have custody on any weekend, plus Thanksgiving or Christmas in alternate years, Mothers’ Day weekend, and equal time on Kathy’s birthday. Kathy will live with her mother from the end of the school term until the week prior to the opening of school, with custody to the father every third weekend in June, July and August.
The record does not reveal any substantive reason to support a finding that joint custody is in the child’s best interest and the previous residential arrangement should be reversed,[2] except for the father’s and paternal grandmother’s testimony that Kathy expressed a desire to live with the father and his family in Harahan. The judge met with Kathy in chambers out of the presence of attorneys or parents, and there is no record of their conversation. A letter from Kathy to the judge, undated, is included in the record and in it she said, “I still have a strong desire to go to John Curtis [in Jefferson Parish] and live a regular family life.” The record does not divulge any major behavioral or social problems in the child, and Kathy’s school record was described as excellent. The testimony fails to provide either a positive or negative picture of the two parties as parents, other than innuendo regarding Mrs. Donaldson’s temper. We note that two obvious factors which weighed against joint custody in pri- or jurisprudence were discussed at trial, namely the duration of time the child had been in a stable environment and the distance between the parents’ homes. Apparently, the trial judge felt those factors to be of insufficient consequence to rebut the presumption in favor of joint custody. We can only conclude, as did the plaintiff, that the court based its judgment on the expressed wishes of Kathy.
As we noted in a case recently decided by this court, Legrand v. Legrand, 455 So.2d 705 (La.App. 5th Cir.1984), courts have placed varying degrees of weight upon the child’s preference but where there is no other reason to change custody, they have denied the change. Johnston v. McCullough, 410 So.2d 1105 (La.1982); Morgan v. Huddlestone, 430 So.2d 304 (La.App. 3rd Cir.1983). In the Legrand case, the court acceded to the children’s wish to live with their father because it was apparent that the mother was no longer able to control them and the home atmosphere was one of tension and antagonism. No such picture was presented in the case before us. We believe that the record does not support a finding that the person claiming sole custody has failed to rebut the presumption in favor of joint custody.
Accordingly, for the reasons stated above, the judgment appealed from is reversed, and we vacate the order for joint custody.
It Is Ordered that custody be returned to the mother, and that the case be remanded to the trial court to fix visitation and child *621 support, and to hear such other matters as the present circumstances may require. Costs of this appeal are to be borne by appellee.
REVERSED AND REMANDED.

. The checklist in LSA-C.C. art. 146(C), as amended in 1983, reads as follows:
"(a) The love, affection, and other emotional ties existing between the parties involved and the child.
"(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his religion or creed, if any.
"(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care, and other material needs.
"(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.
"(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.
"(f) The moral fitness of the parties involved.
"(g) The mental and physical health of the parties involved.
"(h) The home, school, and community record of the child.
"(i) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
“(j) The willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent.
"(k) The distance between the respective residences of the parties.
"(/) Any other factor considered by the court to be relevant to a particular child custody dispute.”

. Our attention has been called to the recent case of Chaudoir v. Chaudoir, 454 So.2d 895 (La.App. 3rd Cir.1984), in which joint custody was awarded under a set of facts similar to ours. We are in accord with that court’s resolution, because its plan retained the basic physical custody arrangement that was in force but only increased the father’s custody time by one month during the summer and was not a complete reversal of the child’s living situation as here.