499 So.2d 611 (1986)
STATE of Louisiana In the Interest of J.B.
No. 86-C-319.
Court of Appeal of Louisiana, Fifth Circuit.
December 8, 1986.
Rehearing Denied January 16, 1987.
*612 Joseph Edwin Kopsa, Chief Legal Counsel Appeal Counsel, Dept. of Public Safety & Corrections, Baton Rouge, for appellant.
Louise Korns and George E. Escher, New Orleans, for appellee, J.B.
Dorothy A. Pendergast, Asst. Dist. Atty., Research & Appeals, Gretna.
Before BOWES, GAUDIN and DUFRESNE, JJ.
BOWES, Judge.
The present case has been brought before this court twice previously, first by writ and then by the first appeal. See State in the Interest of J.B., 485 So.2d 962 (La.App. 5 Cir.1986). In the first appeal, the State of Louisiana through the Department of Public Safety and Corrections, Division of Youth Services (hereinafter simply DYS), appealed a judgment of the juvenile court finding DYS and Mr. Israel Sydney, a DYS supervisor, in contempt of court. The pertinent facts of this case were set out by this writer in the original opinion. We remanded after finding that the judgment of contempt was deficient in that it failed to recite the facts constituting contempt in accordance with La.C.C.P. art. 225(B), and ordered the trial court to recite such facts, as well as to state the finding of contempt and the punishment imposed.
Pursuant to this opinion, the Honorable Karl Hansen, Judge ad hoc of the juvenile court, issued an order in compliance with our mandate, finding certain facts adduced at the hearing of October 16, 1985 constituted constructive contempt. This order found Mr. Sydney and DYS in contempt for willful disobedience of the previous court order of August 21, 1985, which had directed DYS to immediately provide therapy for J.B. with Dr. William Janzen and to arrange for a psychological evaluation of J.B.'s mother with Dr. Janzen. Mr. Sydney was sentenced to 10 days in jail, which sentence was to be suspended upon compliance with the August 21st order. DYS was sentenced to the maximum fine of $500.00 (in accordance with La.R.S. 13:4611(1)(d).)
As a result of this order, DYS applied for supervisory writs, which were granted, and the matter was converted to this appeal according to the rules of this court. Appellants have raised several assignments of error, which we shall address by category.

I. Constitutional Question

Appellants aver that it is unconstitutional for an ad hoc judge appointed by a judge of the Juvenile Court to exercise adjudicative power and issue an order for constructive contempt. They claim that LSA R.S. 13:1598, which provides for the appointment of ad hoc judges by a juvenile judge to act in his stead during that judge's absence, is unconstitutional.
We decline to address that argument since the constitutionality of a statute must first be questioned in the trial court, not the appellate court. Lemire v. New Orleans Public Service, Inc., 458 So.2d 1308 (La.1984); and no assertion of unconstitutionality was pleaded prior to the brief filed in this court.

II. Use of Contempt Powers by the Juvenile Court

Appellants next argue that the original order complained of, which maintained legal custody of J.B. with the DYS and physical custody with her aunt, as well as ordering private therapy for J.B., was violative of prior law enunciated in State in the Interest of Sapia, 397 So.2d 469 (La.1981). Therefore, appellants seek to defend their failure to implement the therapy by claiming that the Code of Civil Procedure Articles 221-227 "were never intended to allow for punishment associated with patently unlawful orders by a judge."
*613 As we pointed out in our original opinion, this order was neither timely nor regularly appealed, and has now become final; and we find the law very clear in such cases:
If a person to whom a court directs an order believes that order is incorrect the remedy is to apply for review, but absent a stay, to comply promptly with the order pending review. Persons who make private determinations of the law and refuse to obey an order risk criminal contempt even if the order is ultimately ruled incorrect. State v. Meyer, 375 So.2d 372 (La.1979) citations omitted
This assignment of error is also without merit.
Likewise, appellants cite Ferry v. Ferry, 444 So.2d 797 (La.App. 3 Cir.1984) for the proposition that, as a general rule, contempt proceedings should not be resorted to when other specific remedies are provided by law. We find, in the present case, that the purpose and object of the contempt proceeding was to vindicate the authority and dignity of the court. For this reason, as in Ferry, the court strictly construed the law applicable to contempt proceedings and therefore resorted to such.
Appellants further suggest that the court should have simply remanded custody of J.B. from DYS as an option to the contempt proceeding. Far from being an alternative remedy, such removal would likely justify, or even encourage, the State's refusal to comply with the orders of the court in the future as well as in the present case. Practiced routinely, appellants' suggestion would result in a wholesale abdication of the State's role of parens patriae with regard to the juveniles within its jurisdiction whenever the State disagreed with the orders of the court. Therefore, we find no merit in this assignment of error.

III. Specific Errors of Law and Fact

Appellants contend that the notice of contempt charges was deficient in that it did not contain the fact that the type of contempt was constructive contempt, or which of the ten bases for contempt was being alleged. We disagree. The pleading styled "Rule to Show Cause and For Contempt" outlines the substance of the August 21st order, and the specific acts which constituted contempt, namely that the therapy and evaluation ordered by the Court had not been instituted, nor had any effort to do so been made by DYS. The motion further stated:
The actions and inactions of DPS & C/DYS are in direct violation of this Honorable Court's ruling, and the State submits that DPS & C/DYS should show cause on a date and time to be fixed by this Honorable Court why it should not be held in contempt.
The DPS & C/DYS representative, according to Jacinta Hawkins, who gave her orders not to start therapy with the juvenile or have the mother evaluated by Dr. Janzen, was Mr. Israel Sydney; accordingly, Mr. Sydney should be the representative to show cause why he should not be found in contempt.
We find the motion stated the actions alleged to be contumacious with sufficient particularity to meet the requirements of C.C.P. art. 225, which states in pertinent part:
A. Except as otherwise provided by law, a person charged with committing a constructive contempt of court may be found guilty thereof and punished therefor only after the trial by the judge of a rule against him to show cause why he should not be adjudged guilty of contempt and punished accordingly. The rule to show cause may issue on the court's own motion or on motion of a party to the action or proceeding and shall state the facts alleged to constitute the contempt.
We do not find within the article the necessity of quoting, chapter and verse, the precise basis for contempt proceedings as long as such is made manifest by a clear recitation of the acts and/or omissions alleged to constitute contempt. The purpose of the requirement to allege such facts is *614 to afford the defendant in such action proper notice. The rule in the present record fulfills that requirement.
The rule was served on Mr. Sydney personally and as a representative of DYS. Additionally, failure of Mr. Sydney and DYS to object to service prior to appearing at the hearing constituted a waiver of such objection. Accordingly, this assignment of error has no merit.
The purpose of the sentence in the present case was to force compliance with the Court's orders, inasmuch as Supervisor Sydney's sentence was to be suspended pending such compliance. Therefore, the contempt is civil in nature. See Legrand v. Legrand, 455 So.2d 705 (La.App. 5 Cir. 1984). Willful disobedience of any lawful judgment, order, mandate, writ, or process of court is a constructive contempt. La.C. C.P. art. 224(2). Willful disobedience means an act or a failure to act that is done "intentionally, knowingly, and purposely, without justifiable excuse." Nelson v. Nelson, 421 So.2d 366 (La.App. 1st Cir.1982).
Our Supreme Court recently reviewed the contempt conviction of an employee of the Department of Health and Human Resources who had been ordered to provide services to a juvenile strikingly similar to the services ordered in the present case. State in the Interest of the Minors R.J.S., D.F.S. and J.A.G. (In re Rita Harris), 493 So.2d 1199 (La.1986). There the court reversed the conviction, reasoning that a rational trier of fact could not have concluded from the record that the worker willfully refused to obey or consciously intended to defy the court order, holding that the worker had attempted compliance.
The order, which was contained in a form minute entry, simply instructed a governmental agency whose function was to provide social services to the court to provide specified services in this case. When Harris was notified of the order, she did not simply disregard it. She attempted compliance by ascertaining that a psychiatric examination had been conducted and by attempting to obtain a report of the evaluation. Production of the report was not solely within her power. Perhaps she did not exercise proper diligence when she failed to inform the court promptly of the problem, or to obtain judicial assistance in securing a report of the evaluation, or to act earlier in scheduling an evaluation by another psychiatrist. And perhaps her substandard performance in carrying out the order timely warranted departmental discipline by reprimand, job suspension or termination. But a rational trier of fact could not have reasonably concluded that this lower level agency employee willfully refused to obey the court order or deliberately defied the authority of the court by her failure to comply timely.
We find the above quotation from Harris supports our conclusion in the present case that the supervisor, Mr. Sydney, a lower level employee, did not willfully refuse to obey the court's orders, and therefore was not guilty of contempt. The testimony clearly shows that Mr. Sydney, himself, could not have authorized the private treatment and evaluation ordered by the court. The testimony further shows that such authority was vested in Mr. Jim White, Director of the Division of Evaluation and Placement by his own admission. Mr. Sydney notified Mr. White of the order, and was orally informed that there was no authorization and no funds available for such treatment. Mr. Sydney testified that he was informed by the State office that writs would be filed in the case. Thereafter, he advised the caseworker, Ms. Hawkins, that payment for the treatment had not been authorized.
As in Harris, supra, implementation of the orders was not solely within his power, and it appears that Sydney, like Harris, failed to act diligently in promptly informing the court of the problem. However, the record does not support the court's finding that Mr. Sydney "in particular" determined that the order would not be implemented, especially in view of the court's statement that Mr. Sydney's "determination" came "upon advise [sic] of legal counsel for DYS."
Rather, it is apparent that the determination not to comply was made by Mr. White, or legal counsel for DYS, or both. Mr. *615 White claimed to have acted on advice of counsel, Joan Hunt, even though it was shown at trial that other children in the department's custody received private therapy with the very same doctor:
Q. Okay, and (H.V.), your department has been ordered in the Vinet case to provide therapy by Doctor Janzen. Is that correct?
A. Yes, sir.
Q. And, according to this letter, the department has seen fit to provide that therapy?
A. Yes, sir.
Q. And, then, (J.B.), is similiarly [sic] situated, is she not?
A. Yes, sir, she is.
Q. In all aspects?
A. Yes.
Q. And, yet the department's position is that they are not going to pay for the court ordered therapy by Dr. Janzen. Is that correct?
A. Yes, sir.
Q. And, that's your ultimate decision?
A. That's on advise [sic] of legal counsel, yes sir.
In addition, Mr. White later admitted that he could have authorized payment for J.B.'s treatment, as he had done in the previous case, although such expenditures could possibly cause problems in the event of an adult.
Nothing in the record justifies the purported advice of legal counsel or that there actually was such advice (and Mrs. Joan Hunt was present in court); or the refusal of the department to authorize payment for the particular things ordered by the court, particularly in view of the fact that DYS failed to timely take appropriate steps to apply for judicial review of what it may have considered an improper order. See Meyer, supra. At the very least, someone from the Department should have called the judge, explained the problems involved, and sought an alternative to the original order.
Nevertheless, for the reasons stated above, we are obliged to find that the conclusion of the trial court that the supervisor, Mr. Sydney, was personally in contempt of court constitutes manifest error and this conviction must be annulled and set aside.
We heartily agree with the position taken by the district attorney in this case that someone must be held accountable for this flagrant failure to follow the orders of the court or adequately explain why they were not followed. However, it must be the truly responsible person. We also agree with the statement of the Supreme Court in Harris that it is a sad commentary when a juvenile judge must resort to his contempt powers to obtain services by a governmental agency, which was created to perform those services.
Accordingly, the fact that we must annul the contempt conviction of Mr. Sydney personally should not be construed as an invitation to other DYS employees to "pass the buck." Rather, when contempt proceedings must be conducted, every effort must be made to ascertain the persons within the agency ultimately responsible for implementing the juvenile court's orders. Only then can a valid determination be made as to who (in addition to the agency itself) has failed or refused to comply and appropriate contempt action taken toward that party. This Court intends to support the trial judges with strict enforcement of their lawful and appropriate orders.
For the foregoing reasons, we affirm the judgment of the juvenile court finding DYS in contempt of court with a fine of Five Hundred Dollars ($500.00); but the finding of contempt against Israel Sydney is set aside and annulled and the sentence vacated.
Costs are assessed to appellant DYS.
AFFIRMED IN PART, SET ASIDE AND ANNULLED IN PART AND SENTENCE VACATED.