JjMcMANUS, J.
This matter is an appeal from a finding of contempt entered by the juvenile judge against the Louisiana Office of Community Services. We affirm the finding.
STATEMENT OF THE CASE
These juvenile proceedings were instituted with a Petition for a Family in Need of Services (FINS) filed by the State on January 10, 2000, naming the minor JN and her two parents, and alleging jurisdiction under Children’s Code articles 729, 730(6) and 731.
A minute entry for the hearing held on January 27, 2000, indicates that an admission to the allegations contained in the petition was entered. Further, at this hearing, the court appointed OCS as the lead agency for administration of State services to JN and her family and ordered OCS to prepare psychological or psychiatric evaluations on the minor, with the written report of the evaluations returnable on or before February 29, 2000.
An order for such services was signed by the juvenile judge on January 27, and the record shows that service on OCS was provided by way of certified letter.
On February 22, a motion for continuance was filed by the State, requesting that the disposition hearing, set for February 29, 2000, be continued because the “Court ordered physical and/or mental examination and evaluation have not been completed in accordance with CJP Article 79, and pursuant to CJP Article 80.” The motion also indicated that the ordered psychological evaluation had been set for March 15, 2000.
The continuance was denied by the trial court on February 24, 2000.
li>A minute entry indicates that on February 29, the disposition was continued and re-set. In addition, DSS/OCS was served on this date with a Rule to Show Cause on Constructive Contempt, which the trial judge set for hearing on March 9, 2000. The rule cited Children’s Code article 777, which provides that dispositional hearings shall be conducted within thirty days of the adjudication.
*95 On March 8, DSS/OCS filed a Motion to Dismiss Rule for Contempt, which was denied by the trial judge on March 9, 2000.
The contempt hearing was held March 9, and at the conclusion of the proceedings, the juvenile judge took the matter under advisement.
The judgment was signed on April 27, 2000: the judge found the Louisiana Office of Community Services (OCS) guilty of constructive contempt under the Children’s Code for its failure to comply with the court order of January 27. The judge fined OCS $1.00 for the contempt. Lengthy written reasons accompanied the judgment.
A motion for appeal was filed by OCS on May 9, 2000.
FACTS
The following facts are pertinent to the finding of contempt.
Testimony at the hearing was provided solely by Veronica Williams, the OCS Family Service Worker assigned to JN’s case.
Williams described the steps she had taken to begin preparing a social summary of JN’s family which, under the established procedure, she is required to do to submit the case for appointment of an evaluation team. Williams testified that these summaries are forwarded for approval to the LSU Management Team (the Louisiana State University Management Team Clinical Evaluation Program — “CEP”). Williams acknowledged the LSU team as the agency “that [the] department requires everyone go through.” Williams stated that the summaries are utilized by the LSU team in making a determination of the evaluator most appropriate for each case.
Williams conceded that these procedures are adhered to “even when the Court” has ordered the evaluation.
Williams testified that she had gathered the necessary information on JN’s family and forwarded the packet as of February 11. Williams further stated that the packet had been |apreceded by telephone notice — as of February 3 — that OCS had been ordered to conduct the evaluations on JN. Upon receipt of the information provided by Williams, LSU requested more information from her, specifically, information about JN’s school situation. This request was made on February 14, and Williams stated that she had responded as of February 16.
Williams testified that after the LSU team had all the necessary information, approval for testing was given on February 16. Williams also admitted that even after “the court orders an evaluation [OCS doesn’t] follow that order, [OCS takes] it somewhere for someone to decide whether or not the Judge is making a Avise decision.”
Williams indicated that OCS had identified, and recommended, a psychologist as early as the eleventh. However, Williams testified that it was not until sometime after the sixteenth that an evaluator had been chosen by the LSU team. Williams further explained that OCS is unable to actually request treatment from the mental health providers.
Williams testified that when she finally had been able to contact the doctor’s office, she was given an appointment for March 16, 2000. Williams stated that she had “pleaded” Avith the doctor’s office for an earlier appointment because JN’s case was a “rush” and an “emergency.” She and her supervisor had telephoned LSU to try to get the appointment moved to an earlier date, and having had no success, *96 were granted permission to use another evaluator.
The second psychologist chosen by OCS to see JN had been able to schedule an emergency appointment to see the juvenile on March 8.
Williams testified that in non-emergency cases, it can take up to two weeks for the LSU team to respond to requests from OCS, and that it is sometimes “almost a month before evaluations are even authorized to be scheduled,” and admitted that it sometimes takes up to two months before all the ordered evaluations are done.
Finally, towards the end of her testimony, Williams indicated that JN’s brother had also been seen by the psychologist on March 8, and that psychiatric services for both juveniles had been approved through LSU on March 9.
LAW AND ARGUMENT
Appellant DSS/OCS raises as their sole assignment of error the trial judge’s finding that the department was in contempt of court. DSS/OCS argues that they did not “willfully” violate the court’s order.
|4We begin our discussion by noting that we may affirm the juvenile judge’s finding of contempt without adhering to her reasons for judgment. And though the trial judge gave lengthy and obviously very carefully thought out reasons, we will not review the finding of contempt in light of the juvenile judge’s objections to the general policies of DSS/OCS and its association with the LSU case management team. We instead find simply that OCS was, on the facts of this case, in contempt of the judge’s order to have JN evaluated in a timely fashion.
We must also acknowledge the well understood principle that State intervention to address the problems of troubled juveniles must occur with the absolute minimum of delay. See State in the Interest of M.P., 538 So.2d 1112, 1116 (La.App. 5 Cir.1989).
Children’s Code article 319 provides, in pertinent part, that:
A. Any person who willfully violates, neglects, or refuses to obey or perform any lawful order of a court may be proceeded against for contempt of court.
Willful disobedience of any lawful judgment, order, mandate, writ, or process of court is a constructive contempt... Willful disobedience means an act or a failure to act that is done “intentionally, knowingly, and purposely, without justifiable excuse.” State in the Interest of J. B., 499 So.2d 611, 615 (La.App. 5 Cir.1986) (citations omitted; citing the articles contained in the Louisiana Code of Civil Procedure).
Children’s Code article 777 provides, in pertinent part, that:
A. Prior to entering a judgment of disposition, the court shall conduct a disposition hearing.
B. This hearing may be conducted immediately after the adjudication and shall be conducted within thirty days after the adjudication (emphasis supplied).
The dictates of article 777 are mandatory. And there is no question that the judge in this matter attempted to comply with these provisions. The adjudication in this matter was held on January 27, 2000, and the judge set the disposition for February 29, 2000.
OCS’s attempts to comply with article 777 — to timely have JN evaluated — were not so conscientious. And based on the testimony given at the contempt hearing, we have no choice but to find that OCS could have complied with the judge’s order *97 that the evaluations be completed prior to the disposition.
Veronica Williams, the Family Service Worker assigned to JN’s case, testified that JN’s evaluation had been delayed because the evaluator initially chosen had been unable to give JN an |sappointment before the disposition date, and this caused OCS to seek permission to look for a second evaluator. Even the appointment with the second approved evaluator, however, could not be scheduled before the disposition was set to be heard. The delay in setting these appointments was within the norm, as described by Williams for non-emergency cases. However, we can’t reconcile OCS’s complacency in accepting these delays with Williams’s repeated statements during her testimony that JN was an “emergency” or “rush” case. Williams also indicated in her testimony that the system provides for a more immediate response in cases of “emergencies,” but did not explain why JN’s emergency status did not call for an expedited evaluation. Further, we note that when OCS did finally set an appointment for JN with the second evaluator, they were able also to make an appointment for JN’s brother, apparently without having sought approval to do so, and though JN’s brother had not originally been the subject of the investigation. And OCS was able to set up further psychiatric appointments for both juveniles immediately after the psychological exam, over the very short twenty-four period between March 8 and March 9.
So, while OCS pleads the intractable nature of “the system,” the above facts instead reveal a system flexible enough to have allowed OCS to timely comply with the judge’s order of January 27. And Williams’s comments that JN presented an “emergency” or “rush” situation, her comments that she “pleaded” with one psychologist to see JN prior to the February disposition, leave no doubt that OCS had knowledge that the instant matter demanded the most immediate attention.
It is for this reason that we must affirm the judgment of the trial court that OCS willfully — knowingly, purposely, unthout justifiable excuse — disobeyed the juvenile court’s lawful order.
AFFIRMED